## FREADER v. CITIES SERVICE TRANSP. CO.

District Court, S. D. New York.
Aug. 28, 1935.

On Hearing on Referee's Report
Jan. 29, 1936.

Silas B. Axtell, of New York City (Frederick H. Cunningham, of New York City, of counsel), for plaintiff.

Hatch & Wolfe, of New York City (Arthur G. Carr, of New York City, of counsel), for defendant.

CAFFEY, District Judge.

The beneficent provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950, will fail unless the scheme of it, including the procedural provisions, be adhered to. Among such provisions, which justice requires be enforced, is the one vesting in an employee the right of election between acceptance of payments from his employer or bringing action against a third party.

In this instance the issue as to whether, through acceptance of compensation payments, the employee has lost his right of action against the third party is properly raised by motion under subdivision 2 of rule 107, Rules of Civil Practice N. Y. While not specifically mentioned in the notice of motion, there is also raised a question of release under subdivision 7 of the rule. Holland v. Atlantic Stevedoring Company, 239 N.Y. 605, 147 N.E. 214.

The plaintiff insists that the motion should be presently denied and the defendant required to raise the issues pending on this motion by answer. It seems to me, however, that, in the interest of prompt administration and without injustice to either side, the question can be and ought to be disposed of before further expense is incurred either by the plaintiff or by the defendant.

At the oral argument and by brief the defendant has expressed its willingness to have the issues raised in the affidavits sent to a referee and to bear the expenses of the reference. That method will be adopted. It is preferable that the determination be based on oral testimony, rather than on affidavits alone.

Settle order accordingly on two days' notice.

### On Hearing on Referee's Report.

The following pen written statement was indorsed on the back of affidavit and notice of motion of Hatch & Wolfe, Esq., attorneys for defendant, referred to Judge Caffey by Judge Bondy under date of January 17, 1936:

"Assuming the validity of section 33 of the statute (discussed in my memorandum of August 28, 1935), I see no escape from the referee's conclusions on the facts and on the law. It may be, as urged by plaintiff's counsel at the oral argument on January 20, 1936, that failure of the statute to require notification to an injured employee of the effect of his accepting compensation payments or of his right to elect between taking such payments and his bringing suit is ill advised and even unfair. Nevertheless, it is not within my province to pass on the contention or to suggest to Congress the form which legislation should take. I am bound by the statute as enacted. I am bound to apply it and by the judgment of the court to enforce it, if valid. I have no doubt of its constitutionality.

"The results are that (1) the referee's report must be confirmed and (2) defendant's motion must be granted.

"The defendant will be required to pay the expenses of the reference, including the cost of stenographic minutes and the compensation of the referee. The parties may be heard by memoranda as to these items (on notice to the referee) upon settlement of the order.

"Settle order accordingly on two days' notice.

"F. G. C."

To the Honorable the Judges of the United States District Court for the Southern District of New York:

Pursuant to an order of this court dated October 3, 1935, referring it to me to hear and report my findings of fact and conclusions of law upon the issues raised by the affidavits submitted by the parties upon the defendant's motion under rule 107, N.Y. Rules of Civil Practice, to dismiss the complaint herein on the ground that plaintiff, through acceptance of compensation payments from his employer, lost the right of action against the above-named defendant, I, the undersigned as referee, report that I took the oath prescribed by law and heard the allegations and evidence of the parties as follows:

The records of Alexian Bros. Hospital at Elizabeth, N. J., showed that plaintiff was admitted to that hospital August 3, 1934, and discharged August 11, 1934. The case history was that he had been struck on the head, rendered unconscious, the right ear lacerated; he did not bleed from the mouth, internal ear, or nose, scalp was intact. The X-ray examination showed no definite fracture. The progress record dated August 11th gave condition good, complained of slight headaches.

The records of St. Elizabeth's Hospital at Elizabeth, N. J., showed that plaintiff was admitted to the hospital on August 24, 1934, and discharged on September 8, 1934, the charges for hospitalization were paid by the Travelers Insurance Company, which was the insurance carrier for the plaintiff's employer, the Warner Quinlan Company. These records in part read: "Provisional diagnosis, cerebral concussion. Referred by Dr. Holland. Under 'cerebral concussion,' in parenthesis, 'Punctate hemorrhages with possible laceration of brain. Final diagnosis same. Result improved on September 8, 1934, 12:40 p. m., at the time of discharge.' Signed, 'Reuben J. Holland'. 'Chief complaint: headaches, weakness following accident.'"

Lawrence Blake, a claim investigator for the Travelers Insurance Company, testified that after his company had received a notice of the accident from the plaintiff's employer, the Warner Quinlan Company, he investigated the claim and saw the plaintiff on August 22d at the plaintiff's home 712 Van Buren street, Linden, N. J. Mr. Blake was received by the plaintiff's wife and taken to the plaintiff who was lying in bed. He told the plaintiff that he was entitled to compensation and gave him his first compensation check (Defendant's Exhibit 1) for $22.68, which check stated on the face thereof that it was for "compensation due" for period from 8/11/34 to 8/25/34. The check bears the indorsement of the plaintiff, Louis Freader, which plaintiff admits is in his handwriting. Photostatic copies of five other checks were received in evidence and marked Exhibits 2 to 6, inclusive. Each of these checks were drawn to the order of Louis Freader and each stated on its face that it was for "compensation due." Each of these checks bears the indorsement of the plaintiff, Louis Freader, and the plaintiff admitted that the indorsements on Exhibits 3, 4, and 5, as well as the indorsement on Exhibit 1, were in his handwriting. He said the indorsements on Exhibits 2 and 6 were in the handwriting of his wife. Blake further testified that Mrs. Freader, the plaintiff's wife, was present when he handed the plaintiff the first check. In October Blake called at the plaintiff's home and plaintiff's wife told him that plaintiff had disappeared from home on September 28, 1934, and that she had received a letter from him saying that he was in Washington. She said he had subsequently gone to Pittsburgh and then to some North Carolina town and that plaintiff had written her that he would not return until he could get some work and make some money.

R. J. D'Ambrosia, acting chief clerk of the United States Employees Compensation Commission, testified that the commission received notice on August 30, 1934, of the plaintiff's accident from the plaintiff's employer, Warner Quinlan Company, and subsequently a notice that payment of compensation had begun without awaiting an award, and that on November 7th the compensation commission received notice that the compensation had been stopped or suspended, upon receipt of which the com-

pensation commission mailed to the plaintiff a notice to the effect that the case would be closed unless the reports now on file are shown to be incorrect. The notice concluded with the statement "please call for an examination any afternoon except Wednesday and Saturday after 1 p. m."; that on December 12th a further notice was sent to the plaintiff reading as follows: "Reports filed with this office in connection with the above entitled case indicate that it may now be closed, subject to the limitations of the act, therefore this action is being taken. A copy of this notice is being furnished to each of the parties above named." The plaintiff claims that he never received these notices. D'Ambrosia also testified that the plaintiff was not notified that he had a right to elect to bring an action against a third party rather than to accept compensation from his employer, but he explained that in the ordinary course of the administration of the compensation act there is no regulation requiring such notification and that this only occurs when there is some controversy with respect to the compensation and the injured man is before the commission for a hearing. No provision in the act requires the giving of such a notice to the injured employee.

The plaintiff testified that he was working for his employer on board defendant's ship and that the first thing he remembered about the accident was when he was in the Alexian Bros. Hospital at Elizabeth, N. J. After he had been in the hospital a week, he came home. He was under the medical care of Dr. Holland. He was in bed and about the house and suffered severe headaches. When he informed Dr. Holland of this, Dr. Holland sent him to the St. Elizabeth's Hospital where he remained two weeks and then returned home. He still had pains in his head and believes he complained of them to Dr. Holland. He denied that he ever saw Blake of the Travelers Insurance Company at his home, and he said he had no recollection of having received the first compensation check, Exhibit 1, and he also testified that he does not recall ever seeing any of the other compensation checks, and although he indorsed Exhibits 1, 3, 4, and 5, he said he has no recollection of ever having written his signature on them and he also said that his wife never told him that compensation was being paid and he did not learn that compensation had been paid until he re-

turned from North Carolina. He claimed that some time after he returned from St. Elizabeth's Hospital he visited his mother, who lived in Elizabeth, N. J., and the next thing he remembered was finding himself in Raleigh, N. C., and although it appears he had been in both Washington and Pittsburgh and had written to his wife from these places, he said that his mind was completely blank and that he remembered nothing from the time he left his mother's home until he found himself in Raleigh, N. C., a matter of some nine days.

Upon his return from North Carolina his wife told him, for the first time, that during his incapacity compensation checks had been received and that subsequently the compensation had been stopped. Accordingly he went to the Travelers Insurance Company to find out why the payment of compensation had been stopped. He has not been treated by any doctor since his return from Raleigh. On or about October 22d he returned to work and worked for about a week and then stopped work because of the pains in his head and later on when he went back to ask if his job was still open he was told "No."

The plaintiff is an intelligent man, born and raised in Elizabeth, N. J., with one year of high school education. In my opinion his claim that he had no knowledge whatsoever that during his incapacity he was being paid workmen's compensation is improbable. Furthermore, his testimony is not corroborated by the doctor who treated him nor by his wife, nor by the inherent probabilities arising from the circumstances surrounding the transaction.

Accordingly, I respectfully find and report to this court:

First. That plaintiff's employer, Warner Quinlan Company, duly complied with all of the terms and conditions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 933–950 in so far as it pertained to the payment of compensation to the plaintiff arising out of the accident which he sustained.

Second. That the plaintiff knowingly accepted six checks from the Travelers Insurance Company, the insurance carrier of his employer, Warner Quinlan Company, namely, a check for $22.68 dated August 22, 1934; a check for $11.34 dated September 5, 1934; a check for $11.34 dated September 10, 1934; a check for

$11.34 dated September 17, 1934; a check for $11.34 dated September 24, 1934; and a check for $22.68 dated October 1, 1934 and cashed these checks and used the proceeds thereof knowing that the said checks were paid to him as compensation due to him as a result of the injuries which he had sustained.

And I do further respectfully find and report to the court as a conclusion of law:

First. That by virtue of section 933, subdivision (b), of the Longshoremen's and Harbor Workers' Compensation Act, the acceptance by the plaintiff, Louis Freader, of the compensation checks described in the last finding of fact operated as an assignment to his employer, the Warner Quinlan Company, of all of the plaintiff's right to recover damages against the Cities Service Transportation Company, and that the plaintiff thereby lost his right to sue such company and the complaint in this action should be dismissed.

Respectfully Submitted,

John McKim Minton, Jr., Referee.