AMERICAN STEVEDORES, INC. *v.* PORELLO ET AL.

Argued December 11, 12, 1946.—Decided March 10, 1947.

*Edward Ash* argued the cause and filed a brief for petitioner in No. 69.

*J. Frank Staley* argued the cause for the United States. With him on the brief were *Acting Solicitor General Washington, Assistant Attorney General Sonnett, Paul A. Sweeney* and *W. Leavenworth Colby.*

*Jacob Rassner* argued the cause and filed briefs for Porello and Lauro.

MR. JUSTICE REED delivered the opinion of the Court.

Porello, a longshoreman, was injured on Sept. 23, 1942, while working in the hold of the U. S. S. Thomas Stone, a public vessel of the United States. His employer, American Stevedores, Inc. (called American hereinafter), was engaged in loading the vessel under a stevedoring contract with the United States. Within two weeks of the accident which caused the injuries, American's insurance carrier, in compliance with § 14 of the Longshoremen's and Harbor Workers' Compensation Act,[1] 33 U. S. C. §§ 901–950, and without the compulsion of an award of compensation by a deputy commissioner under § 19, began compensation payments to Porello, who negotiated the checks he received. In March of 1943 Porello gave notice in accordance with § 33 (a) of election to sue the United States as a third-party tortfeasor rather than to receive compensation. In the same month he filed a libel, amended in November, 1943, to recover damages from the United States under the Public Vessels Act of 1925,[2] 46

---

[1] 44 Stat. 1424, as amended by 52 Stat. 1164.

[2] 43 Stat. 1112:

". . . a libel in personam in admiralty may be brought against the United States, or a petition impleading the United States, for damages caused by a public vessel of the United States, and for compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States . . . ."

U. S. C. § 781 *et seq.*, for the injuries to his person sustained in the accident. Exceptions to the libel being overruled, the United States answered, denying fault on its part and claiming sovereign immunity from suit. Later, by a petition charging American with fault and setting forth an indemnity provision of the stevedoring contract, the United States impleaded American.[3] American then answered the libel, denying fault and asserting as an affirmative defense that, by accepting compensation payments, Porello had lost his right to sue a third-party tortfeasor.

The District Court held that Porello was not barred from maintaining the action. At trial it appeared that a beam lying athwart a hatch had fallen into the hold and struck Porello, causing the injuries complained of. The court held that the United States was negligent in not providing a locking device on the end of the beam, and held that American was negligent through its foreman, whose orders to the operator of a cargo boom caused the beam to be dislodged. Porello was awarded damages from the United States, the United States to receive contribution from American as a joint tortfeasor to the extent of half the damages less the compensation payments received by Porello. On cross appeals by the United States and American the Circuit Court of Appeals held that American was bound by the indemnity provision of the stevedoring contract to make the United States completely whole. With that modification it affirmed the decree below. 153 F. 2d 605. The important issue in this proceeding is whether the Public Vessels Act makes the United States liable for damages on account of personal injuries. The Circuit Court of Appeals thought that this question was decided by the *Canadian Aviator* case,[4] but since the

---

[3] See Rule 56, Rules of Practice for U. S. Courts in Admiralty and Maritime Jurisdiction.

[4] *Canadian Aviator, Ltd.* v. *United States,* 324 U. S. 215.

issue was not squarely posed in that case we granted certiorari in order to determine it at this time. 328 U. S. 827.

The Public Vessels Act provides that a "libel in personam in admiralty may be brought against the United States . . . for damages caused by a public vessel of the United States . . . ."[5] Petitioner argues that the Act only provides a remedy for damage to property. "Damages," however, have historically been awarded both for injury to property and injury to the person—a fact too well-known to have been overlooked by the Congress in enacting this statute.[6] Nor is it easy to conceive any reason, absent intent to the contrary, not to have inserted the word "property" in the statute, an obvious method of imposing the limitation for which the petitioner here contends. Petitioner nonetheless argues that the legislative history of the statute conclusively shows that the congressional intent was to limit redress to property damage.

The history of the Act may be briefly detailed. Starting in 1920 various bills were introduced which provided for liability of the Government to suit for damages caused by its vessels.[7] We need only consider, however, the bills that were pending in the 68th Congress by which the present Act was passed: H. R. 6989, H. R. 9075 and H. R. 9535. The first provided for suits against the United States "for damages caused by collision by a public vessel." The second, designed as an amendment to the Suits in Ad-

---

[5] 43 Stat. 1112, 46 U. S. C. § 781.

[6] It might be noted here that there is a distinction between damage and damages. Black's Law Dictionary cautions that the word "damage," meaning "Loss, injury, or deterioration," is "to be distinguished from its plural,—'damages,'—which means a compensation in money for a loss or damage."

[7] H. R. 15977, 66th Cong., 3d Sess.; H. R. 6256, 67th Cong., 1st Sess.; H. R. 6989, 68th Cong., 1st Sess.; H. R. 9075, 68th Cong., 1st Sess.; H. R. 9535, 68th Cong., 1st Sess.

miralty Act, and supported by the Maritime Law Association of the United States,[8] would have amended that act so that it would not be limited to vessels operated by the Government as merchant vessels, and would thus have made the United States unquestionably liable to suit for personal injuries caused by public vessels.[9] This bill never reached the floor of Congress. The third bill, H. R. 9535, was enacted and became the present Public Vessels Act. Although designed as "a substitute for H. R. 6989," [10] it omitted the words "by collision" which would have limited the liability of the United States to damages resulting from collisions by public vessels. The only discussion of any significance to the present inquiry related to the last of these bills. It is true, as petitioner points out, that the proponent of the bill in the House, Mr. Underhill, said, when the bill was introduced: "The bill I have introduced simply allows suits in admiralty to be brought by owners of vessels whose property has been damaged by collision or other fault of Government vessels

---

[8] See Hearing before the Committee on the Judiciary of the House of Representatives, on H. R. 9075, 68th Cong., 1st Sess., May 21, 1924.

[9] 46 U. S. C. §§ 741, 742:

"No vessel owned by the United States . . . shall, in view of the provision herein made for a libel in personam, be subject to arrest or seizure by judicial process in the United States or its possessions . . ."

"In cases where if such vessel were privately owned or operated, or if such cargo were privately owned and possessed, a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States or against any corporation mentioned in section 741 of this title, as the case may be, provided that such vessel is employed as a merchant vessel or is a tugboat operated by such corporation. . . ."

*Johnson* v. *Fleet Corporation*, 280 U. S. 320; *Brady* v. *Roosevelt S. S. Co.*, 317 U. S. 575.

[10] S. Rep. No. 941, 68th Cong., 2d Sess.

and Government agents."[11]  Further, on inquiry as to whether suit could be brought only where blame was charged to the Government, he answered: "Not entirely; where a man's property is damaged, he can bring a suit."[12] These statements were not, however, answers to questions whether the Act would provide a remedy for injury to the person as well as to property, nor does it appear that the speaker was at the time attentive to such possible distinctions.  It is also true that the Committee report said that "the chief purpose of this bill is to grant private owners of vessels and of merchandise a right of action when their vessels or goods have been damaged as the result of a collision with any Government-owned vessel."[13]  However, in the same report a letter from the Attorney General was incorporated, which, while it was addressed to the predecessor bill, H. R. 6989, serves, in the absence of contradiction by the report, as an indication of the Committee's opinion on the intended effect of the Act. That letter explicitly stated that "The proposed bill intends to give the same relief against the Government for damages caused . . . by its public vessels . . . as is now given against the United States in the operation of its merchant vessels, as provided by the suits in admiralty act of March 9, 1920."  As the right to sue for personal injuries under the Suits in Admiralty Act was clear, it may be inferred, at least as strongly as the opposite is implied by Mr. Underhill's remarks, that the Committee understood

[11] 66 Cong. Rec. 2087.

[12] 66 Cong. Rec. 2088.

[13] S. Rep. No. 941, 68th Cong., 2d Sess., p. 1.  Of course the chief purpose of the bill was to provide a remedy for those who chiefly urged the bill—the vessel owners.  But the committee, in so stating, cannot be taken to have made that purpose the only one.  By that token the purpose would be to provide a remedy only for collision damages, a limitation clearly discarded by omitting the words "by collision" from the Act.  *Canadian Aviator, Ltd.* v. *United States, supra,* n. 4.

that the Act would provide a remedy to persons suffering personal injuries as well as property damage.[14] Moreover, when the bill reached the floor of the Senate there was not the least indication that the members of that body believed that the Act limited relief to owners of damaged property.[15]

The passage of the Suits in Admiralty Act, the Public Vessels Act, and the Federal Tort Claims Act [16] attests to the growing feeling of Congress that the United States should put aside its sovereign armor in cases where federal employees have tortiously caused personal injury or property damage. To hold now that the Public Ves-

---

[14] See note 9, *supra*.

[15] So the only pertinent comments follow, 66 Cong. Rec. 3560:

"Mr. ROBINSON. I think the Senator from Delaware should state briefly to the Senate the effect of the bill. It seems to be a measure of considerable importance.

"Mr. BAYARD. Mr. President, the Senator from Arkansas is quite right; it is a measure of great importance. There are continuous applications being made to the Claims Committee of both Houses for the consideration of bills to reimburse people who have suffered damage from maritime accidents in which United States vessels are concerned, to enable them to present their suits in the various district courts. In this last Congress there were nearly 200 such claim bills introduced in the two Houses.

". . . It would give a person aggrieved because of an accident by reason of the shortcomings of a United States ship the right to go into a district court and prosecute his action. It provides for the appearance of the Attorney General of the United States, and all maritime accidents of any kind resulting from collision, and so on, are taken care of. A great deal of money would be saved to the Government.

"Incidentally, the bill would accomplish something which should have been done in this country a long time ago. It would give an opportunity to do justice when Federal employees have committed an offense against an individual. . . .

"Mr. ROBINSON. If enacted, it would relieve Congress of the consideration of a great many measures in the nature of private claims.

"Mr. BAYARD. All claims of this nature."

[16] 60 Stat. 812, §§ 401–424.

sels Act does not provide a remedy against the United States for personal injuries would in the future only throw this form of maritime action under the Federal Tort Claims Act; for that Act excepts from its coverage "Any claim for which a remedy is provided by the Act . . . of March 3, 1925 [The Public Vessels Act] (U. S. C., title 46, secs. 781–790, inclusive) . . . ." [17] We cannot believe that the Public Vessels Act, read in the light of its legislative history evinces a Congressional intent only to provide a remedy to the owners of damaged property.

This determination does not dispose of all the issues raised by the *Porello* case. When impleaded by the United States in the trial court, American, the petitioner here, pleaded as an affirmative defense that Porello, having accepted compensation payments from American, lost whatever right of action he had against the United States as a third-party tortfeasor. The petitioner admits that § 33 (b) of the Longshoremen's Act was amended in 1938 so that mere acceptance of compensation, without an award, does not operate as an assignment to the employer of the injured employee's cause of action against a third-party tortfeasor, a conclusion which courts had reached under the former wording of the Act.[18] But it contends that the amendment did no more, and that acceptance of compensation still operates as a conclusive election

---

[17] *Id.*, § 421.

[18] The statute formerly provided, 44 Stat. 1440:

"Acceptance of such compensation shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person, whether or not the person entitled to compensation has notified the deputy commissioner of his election."

Under this form of the statute, courts had held that acceptance of compensation precluded the employee from suing a third-party tortfeasor. *Sciortino* v. *Dimon S. S. Corp.*, 39 F. 2d 210, aff'd 44 F. 2d 1019; *Toomey* v. *Waterman S. S. Corp.*, 123 F. 2d 718; *The*

not to sue. It is quite clear that mere acceptance of compensation is not the kind of election for which provision is made by § 33 (a) of the Act, which provides for notice of intention to the deputy commissioner,[19] so the argument is technically imperfect. But in any event, election not to sue a third party and assignment of the cause of action are two sides of the same coin. Surely the Act was never intended and has never been held to provide that after acceptance of compensation, and until an award, neither employer nor employee could sue the third-party tortfeasor. If so held, an employer who was not responsible over to the third party might lose his chance to recoup compensation payments from the third party, while the third party might escape all liability. American, in the unusual circumstances of this case, could have protected itself by controverting the employee's right to receive compensation.[20] In this way it could probably have forced an award and the consequent assignment of the right of action to itself.

Congress has provided that unless an employer controverts the right of the employee to receive compensation,

---

*Nako Maru*, 101 F. 2d 716; *Freader* v. *Cities Service Transp. Co.*, 14 F. Supp. 456. *Contra: Johnsen* v. *American-Hawaiian S. S. Co.*, 98 F. 2d 847.

As amended the statute provides, 52 Stat. 1168:

"Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person."

[19] 33 U. S. C. § 933 (a):

"If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer is liable in damages, he may elect, by giving notice to the deputy commissioner in such manner as the commission may provide, to receive such compensation or to recover damages against such third person."

[20] See 33 U. S. C. § 914 (d) and (h).

he must begin payments within two weeks of the injury.[21] The employee thus receives compensation payments quite soon after his injury by force of the Act. Yet the Act does not put a time limitation upon the period during which an employee must elect to receive compensation or to sue, save the general limitation of one year upon the time to make a claim for compensation.[22] The apparent purpose of the Act is to provide payments during the period while the employee is unable to earn, when they are sorely needed, without compelling him to give up his right to sue a third party when he is least fit to make a judgment of election. For these reasons we think that mere acceptance of compensation payments does not preclude an injured employee from thereafter electing to sue a third-party tortfeasor.

American further argues that the court below, as an admiralty court, did not have jurisdiction of the indemnity provision of the stevedoring contract, and that therefore the decree granting full indemnity to the United States from American was beyond its power. A stevedoring contract is maritime. *Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52, 62; *The Muskegon,* 275 F. 348. And although admiralty jurisdiction over contracts partly maritime and partly non-maritime in nature is doubtful, the cases raising such doubts are concerned only with contracts for the performance of partly non-maritime activities. See *The Richard Winslow,* 71 F. 426; *Pillsbury Flour Mills Co.* v. *Interlake S. S. Co.,* 40 F. 2d 439. To sever a contract provision for indemnity for damages arising out of the performance of wholly maritime activities would only needlessly multiply litigation. Such a provision is a normal clause in contracts to act for others and no more determines the nature of a contract than do conditions on the time and place of payment.

---

[21] 33 U. S. C. § 914 (b), (e).

[22] 33 U. S. C. § 913 (a).

Whether the indemnity provision was rightly construed by the court below is a more difficult question. It was provided that:

> "The Stevedore performing any service under this schedule shall be responsible for any and all damage or injury to persons and cargo while loading or otherwise handling or stowing the same, to any ship including its apparel and equipment, wharves, docks, lighters, elevators, cars, and car-floats used in connection therewith, through the negligence or fault of the Stevedore, his employees and servants."

The Stevedore, American, contends that it is liable to indemnify the United States only if damages resulted from its negligence alone. Respondent, United States, argues and the court below held, that such an interpretation would render the provision meaningless since the United States would "be liable only if itself at fault" and that the clear meaning of the provision is that the Stevedore would be liable so long as the accident was caused in whole or in part through its negligence.

American, however, insists that the clause merely stated existing law. On this record we cannot answer the contention of either party. As it stands the clause is ambiguous. Evidence might well have been taken as to the intention of the parties, but was not.[23] It may be that the parties only meant American to indemnify the United States should the Government be held liable for damages solely caused by American's negligence. It may be that the intention was that American should fully reimburse the United States for all damages caused

---

[23] American moved the Circuit Court of Appeals for an order allowing the parties to take proof and to submit it to the court as to the intent of the parties respecting the indemnity clause of the contract, or in the alternative for an order remanding the proceeding to the District Court for further hearing as to the intent and meaning of the clause. The Circuit Court of Appeals denied the motion.

in any part by American's negligence. Finally, the parties may have intended that American, in case of the joint negligence of the parties, should be responsible for that proportion of the damages which its fault bore to the total fault. Although the usual rule in admiralty, in the absence of contract, is for each joint tortfeasor to pay the injured party a moiety of the damages, *The Alabama,* 92 U. S. 695; *The Atlas,* 93 U. S. 302; *Barbarino* v. *Stanhope S. S. Co.,* 151 F. 2d 553, we do not believe that the last alternative, which provides for a measure of comparative negligence, is necessarily beyond the intent of the parties. Comparative negligence is not unknown to our maritime law. *The Max Morris,* 137 U. S. 1; *The Henry S. Grove,* 22 F. 2d 444; see Robinson on Admiralty, p. 91. From the record it is not clear whether the District Court made any finding as to the meaning of the contract. We believe its interpretation should be left in the first instance to that court, which shall have the benefit of such evidence as there is upon the intention of the parties. If the District Court interprets the contract not to apply to the facts of this case, the court would, of course, be free to adjudge the responsibility of the parties to the contract under applicable rules of admiralty law.

We therefore affirm the decree of the Circuit Court of Appeals as to Porello. We reverse so much of the decree as awards indemnity to the United States under the contract and remand the case to the District Court for determination of the meaning of the contract.

The case of *United States* v. *Lauro,* No. 514, is here on certificate from the Circuit Court of Appeals for the Second Circuit. The certificate is quoted in full in the note.[24] The only question posed by the case is whether a suit for

---

[24] *"Statement of facts*

"On May 27, 1943, Peter Lauro died as a result of injuries suffered by him on May 26, 1943, while he was employed by Marra Bros., contracting stevedores, on board respondent's vessel, designated as

damages for death by wrongful act will lie under the Public Vessels Act. It is settled that where death "results from a maritime tort committed on navigable waters

No. 596, which vessel was docked at Pier 4, Staten Island, New York. The death was caused by personal injuries suffered by Lauro when he fell from a hatch cover on the vessel's main deck into the hold. At the time of the accident, the vessel, No. 596, was owned by the United States of America, respondent, and had been allocated by the respondent to the United States Army. It was being loaded with cargo which was owned by the United States, and which consisted of Army and Navy property and Lend-Lease material which was being shipped to North Africa. Marra Bros., the employer of the deceased, was hired by the United States Army to load the vessel.

"Thereafter, Lauro's widow filed a libel in the United States District Court for the Eastern District of New York against United States of America to recover damages under the Public Vessels Act of 1925; 46 U. S. C. Section 781, for wrongfully causing Lauro's death. In this proceeding the District Court rendered a decree awarding damages to the libelant in the sum of $25,000. From this decree an appeal was taken to this court, and the cause came on for argument on March 12, 1946. On this appeal, the respondent-appellant contended that the said Public Vessels Act of 1925 provided a remedy against the United States for damage to property only, but not for damage to a person or damage arising by reason of the death of a human being. The question thus arising is as follows:

*"Question certified*

"Does the word 'damages,' as it appears in the following sentence of the Public Vessels Act of 1925; 46 U. S. C. § 781:

'A libel in personam in admiralty may be brought against the United States, or a petition impleading the United States, for damages caused by a public vessel of the United States, and for compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States: Provided, That the cause of action arose after the 6th day of April, 1920'

mean damages to property only, or does it mean, as well, damages under Sections 130 to 134 of the Decedent Estate Law of the State of New York recoverable by a personal representative because of the death of a human being? Which question, arising from the facts aforesaid, is hereby submitted to the Supreme Court."

within a State whose statutes give a right of action on account of death" the admiralty will entertain a libel for damages sustained by those to whom the right is given. *Western Fuel Co.* v. *Garcia,* 257 U. S. 233, 242. See discussion in *Just* v. *Chambers,* 312 U. S. 383, 388–391. Here the death occurred on navigable waters of New York, which has a statute granting a right of action for damages on account of wrongful death. Nor can damages suffered on account of death be distinguished from damages on account of personal injuries. Death is the supreme personal injury. For the reasons stated in the *Porello* case we conclude that the word "damages" in the Public Vessels Act, § 1, 46 U. S. C. § 781, means damages under §§ 130–134 of the New York Decedent Estate Law. Accordingly we answer the certificate as follows: The word "damages" as used in 46 U. S. C. § 781 includes damages under §§ 130–134 of the Decedent Estate Law of the State of New York recoverable by a personal representative because of the death of a human being.

Mr. Justice Frankfurter, with whom The Chief Justice concurs, dissenting.

Without disregarding the significance which we have heretofore attached to legislative history, I cannot give the Public Vessels Act [1] the scope given it by the Court.

It can hardly be maintained that, in the setting of legal history, the phrase "damages caused by a public vessel" must cover personal injuries due to failure to provide proper working conditions for a longshoreman. The

---

[1] 43 Stat. 1112, 46 U. S. C. § 781: "That a libel in personam in admiralty may be brought against the United States, or a petition impleading the United States, for damages caused by a public vessel of the United States, and for compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States: *Provided,* That the cause of action arose after the 6th day of April, 1920."

problem for construction is not whether the term "damages" may be applied to money compensation for hurt to person or property. What is to be construed is "damages caused by a public vessel." Standing by itself, that phrase, spontaneously read, may well mean damage inflicted by a public vessel rather than "damages" incurred in connection with its operation. All we held in *Canadian Aviator, Ltd.* v. *United States,* 324 U. S. 215, was that its personnel was part of the public vessel for purposes of "causing" damage to another vessel.

The words do not stand alone. They are illumined by the legislative history of the Public Vessels Act. This history has been so accurately summarized in the Government's brief that we shall avail ourselves of it:

"On May 29, 1924, Mr. Underhill introduced H. R. 9535, 68th Cong., 1st Sess., which became the Public Vessels Act without change so far as the present provision is concerned. At that time, there were already pending two other bills, H. R. 6989 and H. R. 9075, both of which would also have authorized suit in case of damage by a public vessel. H. R. 6989, likewise introduced by Mr. Underhill, was the successor of a series of bills introduced at each session of Congress since 1920. It provided for suit 'for damages caused by collision by a public vessel,' and had the approval of all interested Government departments. H. R. 9075, a new measure, was designed to revise the Suits in Admiralty Act and, at the same time, remove its existing limitation to only such vessels as are operated by the Government as merchant vessels. It would have resulted in making the United States liable for personal injuries by all public vessels exactly as it was already for those by its merchant vessels. H. R. 9075 had the powerful support of the Maritime Law Association of the United States and of Judge Hough, then the country's outstanding admiralty judge.

It did not have the unqualified approval of the interested departments, which were insisting on important changes.

"The omission of H. R. 6989 and its predecessors to cover personal injuries had been the subject of criticisms, some of which are cited in the brief of respondent Porello. But protracted delays were apparent if an attempt were made to rewrite H. R. 9075 so as to meet the objections thereto. Instead of proceeding further with either H. R. 6989 or H. R. 9075, Mr. Underhill, for the Committee, introduced H. R. 9535, which, in place of limiting its grant of jurisdiction to suits 'for damages caused by collision by a public vessel,' covered all suits 'for damages caused by a public vessel.' The purpose of this change is nowhere discussed. Mr. Underhill, in explaining the intent of the proposed legislation, stated, however (66 Cong. Rec. 2087): 'The bill I have introduced simply allows suits in admiralty to be brought by owners of vessels whose property has been damaged by collision or other fault of Government vessels and Government agents.' Never at any time in the course of the debates in the House or Senate was it expressly stated that the bill extended to suits for personal injuries. Many statements in the course of the debates, some of which are cited in petitioner's brief, seem to indicate that only relief for property damage was intended. We accordingly submit that, if decisive weight is to be given to the legislative history, it would appear that the Public Vessels Act was not intended to cover suits for personal injury."

In scores of cases in recent years this Court has given "decisive weight" to legislative history. It has done so even when the mere words of an enactment carried a clear meaning. An impressive course of decisions enjoins upon us not to disregard the legislative history of the Public Vessels Act unless it is so completely at war with the terms of the statute itself that we must deny one

or the other. We can find such a conflict only by reading the Act itself with dogmatic inhospitality to the usual illuminations from without.

We cannot escape the conclusion that there was no jurisdiction for this libel in the District Court.[2]

---

[2] This conclusion is reinforced by the Report of the Senate Committee that "The chief purpose of this bill is to grant private owners of vessels and of merchandise a right of action when their vessels or goods have been damaged as the result of a collision with any Government-owned vessel." S. Rep. No. 941, 68th Cong., 2d Sess., p. 1. The Court's opinion finds overriding significance in a letter by the Attorney General commenting on the Bill, in which he stated that it "intends to give the same relief against the Government for damages caused . . . by its public vessels" as was given by the Suits in Admiralty Act. That Act did afford the right to sue for personal injuries. To prefer the Attorney General's view to that expressed by those in charge of a measure would in itself be not the normal choice. And this letter of the Attorney General antedated the Report of the Committee and the statement of Representative Underhill. Compare *United States* v. *Durkee Famous Foods*, 306 U. S. 68, 71, where the Committee Report "stated that the purpose of the bill was set out in a letter from the Attorney General which it quoted." To reject the subsequent authoritative statements of the Congressional proponents of the legislation and to accept the view of the Attorney General to which the Government now does not even refer, is to discard in favor of dim remote light what heretofore has been deemed controlling illumination.