## LO BUE v. UNITED STATES et al.
### No. 17922.

District Court, E. D. New York.
Dec. 11, 1947.

Arkin, Lebovici & Kottler, of New York City (Joseph Kottler, of New York City, of counsel), for libellant.

J. Vincent Keogh, U. S. Atty., of Brooklyn, N. Y., and Barry, Wainwright, Thacher & Symmers, of New York City (Joseph M. Brush, of New York City, of counsel), for respondent.

John P. Smith, of New York City (Bigham, Englar, Jones & Houston, of New York City and John L. Quinlan and John M. Aherne, both of New York City, of counsel), for respondent-impleaded.

GALSTON, District Judge.

The libellant, while employed and working as a stevedore by the respondent-impleaded, was severely injured on March 4, 1946, aboard the vessel Bernard L. Rodman, owned by the respondent. He brings this suit pursuant to the provisions of the Suits in Admiralty Act, Title 46 U.S.C.A., § 741 et seq., and the Public Vessels Act, Title 46 U.S.C.A. § 781 et seq.

The vessel was tied up at a pier in Greenpoint, Brooklyn. The Jerka Corporation had entered into a contract with the respondent to remove a cargo of slag ballast. The plaintiff was one of the stevedore crew who were to perform the work. With that crew he went aboard the vessel at about eight o'clock in the morning, and after performing some miscellaneous work on the main deck, entered the No. 3 hatch to the 'tween deck to remove the ballast. The 'tween deck was rather dark: He walked around the slag pile and while so doing fell through an open unguarded trimming hatch to the bottom of the hold, about 40 feet below.

The facts are not difficult to resolve. The libellant struck me as an honest and intelligent witness. He received his orders from the hatch boss, an employee of the respondent-impleaded. He found the slag or ballast spread all over the 'tween deck, and the only light he could see was in the square of the hatch, which was natural light coming from the deck. Towards the corners or wings there was very little light because the deck obscured it. The libellant walked along the port side of the mound of slag into the center of the 'tween deck and towards the forward end of the ship. His purpose was to put his coat down, but as he walked across he noticed Cannella sitting on the starboard side. These men worked in pairs. Instead of going over the mound he went directly to the forward end of the ship and started then over towards the starboard side to tell Cannella that he wanted assistance in pushing the bucket. He saw a beam lying on the floor, and as he stepped over the beam he fell through the opening.

He testified that there was also an upright beam which supported the deck, which he passed in his walk. This beam was on his right side, and since it was very dark he put out his hand for support as he walked over the horizontal beam. This vertical beam, as well as the insufficient light, obscured the opening through which he fell.

It stands uncontradicted that Lo Bue had received no warning of the presence of this open trimming hatch. It also is uncontradicted that no officer of the vessel had given warning to anyone connected with the stevedoring company of the presence of this open trimming hatch.

It is easily inferable, therefore, that the proximate cause of the accident was the failure of the respondent to furnish the libellant with a safe place in which to work. The master of the vessel had left the trimming hatches open purposely as a safety measure, so he testified, to facilitate trimming at sea when circumstances warranted it. But however good the reason was for leaving the safety hatches open while the vessel was on the high seas, the reason did not obtain after the vessel reached port, unless indeed the stevedoring crew had been informed of the open hatch. The result was the existence of a dangerous situation not made known to the libellant or anyone connected with the respondent-impleaded.

Whether the respondent-impleaded was also negligent is much more difficult to determine. The third officer of the Rodman testified that he regarded it as improper to leave open a manhole or hatch where men might be working. Brew, called by the respondent as an expert supervising stevedore, said that if a mate knew that the stevedores were going to work in an area where a dangerous condition existed, it would be the custom to warn the stevedores. See Anderson v. Lorentzen, 2 Cir., 160 F.2d 173, 174. In that case Judge Chase, writing for the court, said:

"The defendants-appellants not only owed the duty to provide a seaworthy ship on which these stevedores who unloaded the cargo might work, Seas Shipping Co., Inc., v. Sieracki, 328 U.S. 85, 66 S.Ct. 872 [90 L.Ed. 1099], but they owed them, as invitees, or business visitors, the duty to provide a reasonably safe place to do their work. Fodera v. Booth American Shipping Corporation, 2 Cir., 159 F.2d 795. This duty was non-delegable and persisted despite any concurrent duty on the part of the stevedoring company * * * and it was * * * the duty of the defendants to warn the stevedores who worked there of that danger. Puleo, Adm'x, v. H. E. Moss Co. et al., 2 Cir., 159 F.2d 842."

From the above quotation, though it definitely fixed the obligation of the respondent, there is left open the question of finding any concurrent duty of the stevedoring company. In this case, in criticism of the respondent-impleaded, it is contended that no one connected with the Jarka Corporation made inquiry of any officer of the steamship concerning the existence of a dangerous condition, nor was any request made for cluster lights which the ship had available. No established custom was proved in respect to the former of these two contentions, and it can readily be understood why no such custom need prevail, for if the ship was under obligation, as it was, to furnish a safe place for the men to work and to give warning of an

unsafe condition, it seems reasonable to infer that the stevedoring company was justified in believing that the ship was seaworthy, and that the quarters to be occupied by the members of the stevedore's crew would be safe. In regard to the light, a different situation exists, for the stevedoring boss could see that there was no artificial light in the 'tween deck, and that the natural light did not illuminate the whole of that part of the 'tween deck on which the stevedores were to work. It may be that had a cluster of lights been placed in the 'tween deck, the accident would not have happened. In this situation, the failure of the hatch boss to remove all of the main deck hatch boards covering No. 3 hatch must be regarded as in a measure contributing to the happening of the accident.

■ As to the contention that libellant was guilty of contributory negligence, it would seem that Badalamenti v. United States, 2 Cir., 160 F.2d 422, 425, is a complete answer. The circumstances are not unlike so far as walking in an area of darkness is concerned. In that case it was held that the libellant had no reason to suppose that the hatch was open. Judge Augustus Hand, writing for the court, said:

"We think it too great a limitation upon the safeguards which ought to be provided for a workman to hold that if he strays about 50 feet from the place in which he is to work, in search of something to aid him in his task, he has no right to a warning of unknown danger or other protection."

The libellant is entitled to a decree against the respondent.

■ The respondent-impleaded, however, cannot as a matter of law be held liable directly to the libellant in this action, for as was held in Benevento v. United States et al., 2 Cir., 160 F.2d 487, his exclusive direct remedy against the employer stevedoring company lies under the Longshoremen's and Harbor Workers' Compensation Act, §§ 1, 5, 33 U.S.C.A. §§ 901, 905.

There is, however, left open for further decision the right, if any, of the respondent against the respondent-impleaded for indemnity. After the trial had been concluded, and while this opinion was being drafted, the respondent moved to amend its impleading petition in order to develop fully its right of indemnity under the contract between the respondent and the respondent-impleaded. I am about to grant that motion in view of American Stevedores v. Porello, 330 U.S. 446, 67 S.Ct. 847, so as to enable parties to the contract to clear up any ambiguity in the indemnifying clause. On the filing of such depositions as may be taken, a supplemental decree will be entered herein determining the relative rights of the parties to that contract.

Meanwhile appropriate findings of fact and conclusions of law, except as to the meaning and scope of the indemnity clause, will be filed.