372

NEW YORK & PORTO RICO S. S. CO. OF
NEW YORK v. LEE'S LIGHTERS, Inc.
No. 10265.

District Court, E. D. New York.
Dec. 2, 1930.

Hatch & Wolfe, of New York City (Carver W. Wolfe, of New York City, of counsel), for libelant.

E. C. Sherwood, of New York City (Henry Bogert Clark, of New York City, of counsel), for respondent.

CAMPBELL, District Judge.

This suit is brought in admiralty to recover money paid by the libelant in satisfaction of the judgment obtained against it in the Supreme Court, County of Kings, plus expenses arising out of an injury to one Frank Amato, occurring on February 6, 1919, on board the respondent's lighter Alexander Lee, due to an alleged defective fall, on the lighter.

I find the following facts:

The libelant is a corporation duly organized and existing under and by virtue of the laws of the state of New York.

The respondent is, and was at all the times hereinafter mentioned, a corporation organized and existing under and by virtue of the laws of the state of New York, and engaged in the lighterage business, and having property within the Eastern District of New York, to wit, certain lighters.

On or about the 6th day of February, 1919, the respondent, its agents, servants, and employees, contracted and agreed to and did furnish to this libelant, the said lighter Alexander Lee, its machinery and equipment and crew in consideration of certain hire, to be used in connection with the unloading of the cargo of the libelant's vessel Coamo, then lying at Pier 35, borough of Brooklyn, city, county, and state of New York.

On or about the 26th day of February, 1919, one Frank Amato was in the employ of the libelant as a stevedore, and while so employed, went aboard the lighter Alexander Lee, in connection with the discharging of the steamship Coamo, for the purpose of assisting in placing on the lighter bags of sugar which were being unloaded from the deck of the steamship Coamo by the tackle of the lighter Alexander Lee and landed on said lighter.

The winch boom fall and hook which were used in lifting the cargo from the deck of the steamship Coamo and placing it on the lighter were furnished by the respondent with the lighter, and the same were being operated by an employee of the respondent.

The stowage of said lighter was laid out by her captain.

The stevedoring work was performed by employees of the libelant, and the lighter and stevedores were working under the direction of an employee of the libelant, who was in charge thereof.

The lighter had been at work discharging the steamship Coamo on February 5, 1919, and for about one and one-half hours on February 6, 1919, before the said Frank Amato was injured.

The fall furnished by the respondent with said lighter was a rusty, old, and kinky cable, in a defective, improper, unsuitable, and unsafe condition when it was delivered to the libelant, and the condition of the said fall was not caused by any act of the libelant.

On or about the 6th day of February, 1919, between 9:30 and 10 o'clock a. m., while the said Frank Amato was at work upon the said lighter, he sustained severe bodily injuries due to the defective, worn, improper, unsuitable, and unsafe condition of a certain fall and hook, which were part of the tackle of the lighter Alexander Lee.

Thereafter, one Vito Amato, as committee of the person and property of Frank Amato, an incompetent, brought action in the Supreme Court, Kings County, against the libelant demanding judgment in the sum of $75,000 as damages for the injuries which he received as hereinbefore recited; that after a trial before a jury a verdict was rendered against the libelant in the sum of $12,000, in favor of said Vito Amato, as committee of the person and property of Frank Amato, an incompetent, and judgment was entered thereon for the sum of $12,000 and costs in the sum of $140.46, a total of $12,140.46, which this libelant paid on the 31st day of October, 1924, after a unanimous affirmance of said judgment by the Appellate Division, Second Department, together with $229.73 costs on appeal.

Prior to the trial of said action, libelant gave to the respondent written notice that the case would be tried in the near future, and notifying it to come in and defend the action, and in the event of the failure of the respondent to do so, that this libelant would hold the said respondent responsible for the costs and expenses of the action, together with any judgment this libelant was compelled to pay therein, which notice was totally disregarded by the respondent.

On the facts found, the respondent having had notice of the suit and reasonable opportunity to come in and defend, and having failed to do so, the judgment is conclusive as to the liability of the defendant in the original action. Chicago v. Robbins, 2 Black (67 U. S.) 418, 17 L. Ed. 298; Robbins v. Chicago City, 4 Wall. (71 U. S.) 657, 18 L. Ed. 427; Washington Gaslight Co. v. Dist. of Columbia, 161 U. S. 316, 16 S. Ct. 564, 40 L. Ed. 712; Oceanic Steam Navigation Co. v. Campania Transatlantica Espanola, 144 N. Y. 663, 39 N. E. 360. But the whole record may be examined to ascertain the subject-matter of the controversy and fix the scope of the thing adjudged. Russell v. Place, 94 U. S. 606, 24 L. Ed. 214; Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; Freeman on Judgments, § 273.

An examination of the record in the state court action shows as follows:

The complaint alleged that the injury "was caused solely through and by reason of the carelessness and negligence of the defendant and of the said person in its employ, entrusted by it with and exercising superintendence and vested with authority to direct, command and control the said Frank Amato * * * in the performance of his work, and by reason of a defect in the condition of the ways, works, machinery, plant and equipment of the said defendant, which had not been discovered or remedied owing to the carelessness and negligence of the said defendant, and of the person above referred to, in carelessly and negligently causing and permitting the work to be done in an unsafe and defective and improper manner; * * * in carelessly and negligently causing and directing him to work in an unsafe and dangerous place; and in otherwise failing and omitting to take proper and suitable precautions for his safety and those lawfully at work at the said place; and in otherwise carelessly and negligently failing and omitting to see to it that proper and suitable tools and appliances were furnished in the performance of the said work for the proper carrying on of the said work * * * in carelessly and negligently failing and omitting to promulgate and enforce proper rules and regulations for the safe conduct of the said work."

The bill of particulars stated: "Plaintiff claims that the defendant and a person in its employ entrusted by it with superintendence and with authority to direct the plaintiff in his work, were careless and negligent in knowingly and for a long time causing and permitting the work of unloading the ship and loading the lighter, to be carried on with improper and unsafe appliances, particularly an old, worn, rusty and kinky cable, which was unsuited to the purpose for which it was intended, and plaintiff claims that by reason of the use by the defendant of the unsafe and defective cable, as above set forth, the place in which he was directed to work was rendered unsafe; and plaintiff claims that the defendant and its said superintendent carelessly, negligently and knowingly failed and omitted to see to it that the rusty, old and kinky cable was replaced so as to permit of the safe doing of the work, and plaintiff claims that the ways, works, machinery and equipment of the defendant were defective in the respects herein set forth; and plaintiff claims that the defendant should have promulgated and enforced a rule regarding that the hook attached to the end of the fall be let loose after it had cleared those working on the deck of the lighter, and plaintiff claims that the method used by the defendant in the performance of the work and then going on was not safe and was contrary to the usual and customary method of doing the work in this respect."

In order to ascertain what was submitted to the jury, we must look to the judge's charge, the material portion of which stated:

"The plaintiff claims that he was engaged on the lighter in properly placing the sugar upon the lighter. He claims that by reason of a defective and imperfect wire he sustained injury. His claim is that the wire cable to which this hook was attached or connected with was old, that it was not the proper appliance for doing this work, and that by reason of a kink in the wire cable the hook was forced to jump, and by the jump this hook struck him in the face, from which he claims he sustained serious injury which finally developed into insanity."

After reading from the second, fourth, and fifth paragraphs of the complaint, and quoting from the bill of particulars, the judge continued to charge:

"This is the claim made against the de-

fendant company by the plaintiff. His claim is that this cable, at the time of the unloading of the sugar from the ship, was an old cable, that it was caused to kink after it had been released from the draft of sugar, and that by reason of the kinky cable it jumped, in other words, it went across the lighter unevenly, and that by reason of this kink in the wire he was struck by the hook and sustained the injury of which he complains."

These were the only questions concerning the negligence of the defendant submitted to the jury in the state court action, although some evidence had been given concerning whether the method of doing the work was improper, considering the fact that the cable was in the condition testified to, and the finding of the jury is conclusive that the fall "was old, worn, rusty and kinky and was unsuited for the purpose for which it was intended," when the lighter was delivered to the libelant.

■ The contract under which the lighter was furnished contains no express provisions regarding its seaworthiness, but there was an implied warranty of absolute seaworthiness at the time the lighter was delivered. In re Myers Excursion & Navigation Co. (C. C. A.) 61 F. 109; Naylor & Co. v. Terminal Shipping Co. (D. C.) 237 F. 725; The Sagamore (C. C. A.) 300 F. 701, certiorari denied 266 U. S. 612, 45 S. Ct. 95, 69 L. Ed. 467; The Presque Isle (D. C.) 140 F. 202.

From the testimony of Thomas A. Carey and Natalie Caccio, witnesses in the state court action, it clearly appears that the fall was old and in bad condition and had a kink in it, and from the testimony of Thomas J. Caulfield, an expert called to testify in that action, "The cable can become rusted and the strands wear on account of the rust, and then if it was improperly coiled, it would form a kink if there was a weight laid on it."

It was further testified in that action by Thomas A. Carey and Jerome Carey that the weight was about eight or ten feet from the end of the wire cables.

In an attempt to prove that the cable and falls were in good condition, the respondent called the witness Christian Andersen, who was testifying from memory to occurrences eleven years old; there being no evidence that he made any statement at the time, that the accident was called to his attention at the time, or that there was any unusual circumstance which would cause him to remember specific facts concerning his most casual inspection of the fall. While conceding to the witness Andersen an honest belief in the truth of his testimony, I am convinced that he was in error.

The witness did not know how long the fall had been in use, but admitted that it had been exposed to the elements during the period of its use. He did not take hold of the wire, but only examined it visually from the deck of a vessel, at least ten feet away from the fall, which was running through a block sixty-five feet above the deck of the lighter.

The witness says of the fall: "It was not worn any so you could see it."

As to the absence of a kink in the fall, the witness seems to base his conclusion on the statement: "I said if it had a kink it could not go through the block."

If the witness was correct, then the stevedore Amato would never have been injured, but he was, and it was due to a kink in the fall.

The witness Andersen also disagrees with the witnesses in the state court as to the position of the weight, which he fixes at the end of the wire cable, whereas they place it at about eight or ten feet above the end of the wire cable.

Again, if the witness Andersen was correct, the accident could never have happened; but it did happen, and I therefore conclude that the testimony of the witnesses in the state court is entitled to greater weight.

The defective condition of the fall did not arise between 8 o'clock on the morning of the accident and the time of the accident.

■ The libelant was negligent in allowing the plaintiff to work with a fall so clearly old, worn, rusty, and kinky, and unsuited for the purposes for which it was intended; which condition, on the testimony of the witnesses in the state court case, must have been plainly apparent on any reasonable inspection, and the libelant and respondent are in pari delicto.

The case at bar is clearly distinguishable from The Lewis Luckenbach (C. C. A.) 207 F. 66, in which a stevedore was injured by reason of a defective strongback across the vessel's hatch, a part of the vessel's structure, while in the case at bar the defect was in the fall, actively in use, which libelant should have inspected, at least at the time of the commencement of the work each day.

■ Notwithstanding the fact that the libelant and respondent were joint tort-feasors, the libelant is entitled to contribution in admiralty. Erie R. R. Co. v. Erie Transportation Co., 204 U. S. 220, 225, 27 S. Ct. 246,

247, 51 L. Ed. 450, in which the Supreme Court held:

"The rule of the common law, even, that there is no contribution between wrongdoers, is subject to exception. Pollock, Torts, 7th Ed. 195, 196. Whatever its origin, the admiralty rule in this country is well known to be the other way." The North Star, 106 U. S. 17, 1 S. Ct. 41, 27 L. Ed. 91; The Sterling (The Equator), 106 U. S. 647, 1 S. Ct. 89, 27 L. Ed. 98.

There is no statute of limitations in admiralty, but the state statute is usually followed unless the circumstances are such that by the lapse of time the position of the respondent was changed to its detriment, which has not been shown.

The statute did not commence to run in the case at bar until libelant was compelled to pay the judgment recovered in the state court action, on October 31, 1924, and the action at bar was commenced on April 6, 1927.

A decree may be entered in favor of the libelant against the respondent, for the sum of $7,146.88, with costs.