**REDERII v. JARKA CORPORATION.**

No. 1473.

United States District Court
District Maine, S. D.

Jan. 28, 1949.

286

Nathan W. Thompson, of Portland, Me., for libelant.

Robinson & Richardson and Charles A. Pomeroy, all of Portland, Me., for respondent.

CLIFFORD, District Judge.

This is a cause in admiralty in which the libelant is a shipowner and the respondent is a stevedoring company. Libelant, having settled an action brought against him by an employee of the respondent, who was injured while working on one of libelant's ships, seeks to recover the costs incurred and money paid on account of such prior action and settlement.

The libel was filed in 1937. The respondent filed exceptions to the libel, praying that the libel be dismissed. On the issues raised by the libel and exceptions, Judge John A. Peters, then Judge of this Court, rendered an opinion and issued a decree overruling the exceptions. D.C., 26 F.Supp. 304. An appeal was taken to the Circuit Court of Appeals for the First Circuit, which, in a per curiam opinion, dismissed the appeal for the reason that the decree appealed from was interlocutory and "* * * merely determines that the libel states a good cause of action." Jarka Corporation v. Rederii, 1 Cir., 110 F.2d 234, 235.

Further progress in the matter has been held up during the War years when most of the witnesses were serving on vessels in all parts of the world. The matter is now presented to the Court on the pleadings, depositions of witnesses, and briefs of Proctors.

The factual background can be briefly given. The libelant's vessel, the Norwegian Steamship Helgoy, with cargo destined for Portland, Maine, New York City, and Albany, New York, arrived in Portland on July 4, 1936. Baled pulp was to be discharged at Portland, and the unloading work was performed by the respondent, The Jarka Corporation. Unloading commenced on the morning of July 6, 1936. Patrick Davis, whose injury in the process of unloading is the ultimate cause of this litigation, was, at the time, a longshoreman employed by The Jarka Corporation.

After about fifteen hours of unloading, on the afternoon of July 7, 1936, at about 4 o'clock in the afternoon, a large bale of pulp, weighing about 400 pounds, slipped from a sling, which was being hoisted from a hold of the vessel to the deck, and fell about thirty feet into the hold, striking Patrick Davis, who, with others, was working loading bales on slings. As a result of the injury then sustained, one of Davis' legs had to be amputated above the knee.

Davis thereupon libeled the vessel in New York and sought damages of $75,000. Before this trial proceeded very far, a settlement was effected, in which Davis' claim was compromised at $7500, which amount was paid by the present libelant. The Jarka Corporation did not take any action in the trial of this cause.

The libelant then brought this action to recover from the respondent reimbursement for moneys paid Davis in the prior action, together with the expenses incurred in such action and settlement. The respondent filed exceptions to this libel on two major grounds: (1) that the respondent, being subject to the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et

seq., and said Davis being its employee and having been injured on navigable waters, its liability is solely to be determined under such Act and that the libelant does not bring this action thereunder; and (2) that, inasmuch as the libel alleged that the injury to Davis was caused wholly by the respondent, the libelant, in paying any sums to Davis was acting purely as a volunteer.

As has been stated, these exceptions were dismissed by Judge Peters of this Court, the decree of dismissal, from which appeal was then taken, being adjudged merely an interlocutory one by the Circuit Court of Appeals.

The respondent has since filed its answer stating in brief: (1) that no act of negligence on its part contributed to the injury to Davis; (2) that any payment made to or on account of said Davis by libelant was voluntary and made without legal obligations; and (3) that its liability is solely to be governed by the Longshoremen's and Harbor Workers' Act and that the libel in this case was not brought under this Act.

The issues in the case as it now stands are these: (1) Despite the earlier ruling of a Judge of this Court, does the Longshoremen's and Harbor Workers' Act preclude any consideration of the merits and any chance of recovery on the part of the libelant? (2) If not, was the respondent guilty of any negligent act which contributed to the injury? (3) If the merits may be considered and if the respondent was negligent, was the libelant's action in paying Davis that of a volunteer? (4) If recovery by the libelant may be had, in what amount should it be ordered?

The first question, therefore, is whether the libelant is precluded from recovery in this action because of the provisions of the Longshoremen's and Harbor Workers' Act. The pertinent section of this Act is Section 5, which provides as follows:

"The liability of an employer prescribed in Section 4 shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury * * *."

The respondent argues that libelant is appropriately described by this provision as "anyone otherwise entitled to recover * * * on account of such injury"; that to allow recovery by such third person as the libelant from the employer would nullify the Act's limitation of damages (a maximum of $7500 being the death benefit limitation under the Act) by permitting the employee to sue a third party for any amount and by permitting the third party to go against the employer for such amount whether in excess of the Act's maximum figure or not; that the Act was intended to give the employer a right of action for indemnity against third parties, and to make him immune to such actions by third parties.

As has been noted, this issue was decided against the respondent by Judge Peters. With this decision before us and decree issued, the duty of this Court is now to decide whether the doctrine of "law of the case" should be applied to the prior ruling.

In Messenger v. Anderson, 225 U. S. 436, at page 444, 32 S.Ct. 739, at page 740, 56 L.Ed. 1152, Mr. Justice Holmes stated for the Supreme Court:

"In the absence of statute the phrase, 'law of the case,' as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power."

In White v. Higgins, 1 Cir., 116 F.2d 312, at page 317, Judge Magruder spoke for the Circuit Court of Appeals for the First Circuit:

"Though the power exists to reopen the points of law already decided, it is a power which will necessarily be exercised sparingly, and only in a clear instance of previous error, to prevent a manifest injustice. The doctrine of law of the case is normally a salutary one in the interest of economy of effort and of narrowing down the issues in successive stages of litigation. In the absence of exceptional circumstances, it would be unfortunate if on second ap-

peal counsel felt free to argue dé novo as a matter of course the points decided on previous appeal."

Also to the same effect is Cochran v. M. & M. Transp. Co., 1 Cir., 110 F.2d 519.

This being the law it is for this Court to first decide whether or not the prior ruling on the defense raised by the respondent with regard to the exclusionary effect of the Longshoremen's and Harbor Workers' Act should stand. Unless it appears that such ruling was a "clear instance of pervious error" and would result in "a manifest injustice" it should stand.

At the time Judge Peters wrote his opinion, in 1939, federal authority on the point was lacking. Since that time several cases have arisen under the Act. Of these, the respondent relies almost solely on Porello v. United States, 2 Cir., 1946, 153 F.2d 605. In this as in most of the other cases to be cited the facts were that, as in the case at bar, an employee of a stevedore was injured on a ship and sued the ship, whereupon the ship endeavored to recover from the stevedore. The court said, 153 F.2d at page 607:

"* * * both the tort-feasors would be jointly and severally liable and each should bear one-half the libellant's damages except for the statutory immunity granted by section 5, 33 U.S.C.A. § 905, which makes the compensation liability exclusive with respect to the employer.

"For a right of contribution to accrue between tort-feasors, they must be joint wrongdoers in the sense that their tort or torts have imposed a common liability upon them to the party injured. * * * Since the libellant has no cause of action against his employer, the United States (the shipowner) can claim no contribution on the theory of a common liability which it has been compelled to pay."

The court then proceeded to discuss whether indemnity could be had by reason of a contract between the ship and the stevedore.

This case went to the Supreme Court sub nom American Stevedores v. Porello, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011. The Court commented, 330 U.S. at page 458, 67 S.Ct at page 854:

"From the record it is not clear whether the District Court made any finding as to the meaning of the contract. We believe its interpretation should be left in the first instance to that court, which shall have the benefit of such evidence as there is upon the intention of the parties. If the District Court interprets the contract not to apply to the facts of this case, the court would, of course, be free to adjudge the responsibility of the parties to the contract under applicable rules of admiralty law."

The meaning of the sentence last quoted casts some doubt as to whether Porello v. United States is still authority for the respondent's contention that there can be no recourse by libelant against respondent in such an action as the present one. Judge Kirkpatrick in Coal Operators Cas. Co. v. United States, D.C., 76 F.Supp. 681, at page 683, stated, concerning the passage from American Stevedores v. Porello, just quoted:

"The Supreme Court was remanding the case to the District Court with instructions and in the sentence quoted was telling the District Judge that, absent the contract of indemnity, he would be free to apply the admiralty rule of contribution. The Circuit Court of Appeals had squarely ruled that there could be no contribution and the Supreme Court, although it did not mention the position of the Circuit Court of Appeals, certainly must have intended to overrule it."

In The S. S. Samovar, D.C., 72 F.Supp. 574, at page 589, the court stated that it felt, contrary to the opinion of Judge Kirkpatrick, that the Circuit Court in the Porello case had specifically left open the question of contribution in its per curiam opinion on a petition for rehearing, 153 F.2d 605, 609. Indeed, it would be difficult to know today for what proposition the Porello case, in its several phases, stands.

The failure of the Circuit Court in the Porello case to overrule the doctrine announced in The Tampico, D.C.W.D.N.Y., 45 F.Supp. 174, casts further doubt on its intention. In the latter case the owner of a barge, on which a longshoreman was injured, was permitted to recover contribution from the longshoreman's employer,

notwithstanding the Act, the Court saying, 45 F.Supp. at page 175:

"(The employer) having secured the payment to its employees of compensation under the Longshoremen's and Harbor Workers' Compensation Act * * * is immune from suits for damages resulting from libellant's injuries brought by the libellant or anyone in his right * * *. But the right in admiralty to contribution between wrongdoers *does not stand on subrogation but arises directly from the tort.*" (Emphasis supplied.)

The defense asserted here by respondent under the provisions of the Longshoremen's and Harbor Workers' Act was also raised in The Samovar case, supra, the court saying, 72 F.Supp. at page 588: "Exceptions made upon the ground first stated will also be overruled, *because the Longshoremen's and Harbor Workers' Compensation Act alters only the liability of the employer to the employee * * * and does not affect the conventional relationship between the employer and other tort-feasors.*" (Emphasis supplied.)

Two cases, although distinguishable on their facts inasmuch as contracts of indemnity were entered into by the ship and stevedore, nevertheless, in their reasoning support the contention of the libelant. In Severn v. United States, D.C., 69 F.Supp. 21, at page 22, the court says:

"The Longshoremen's and Harbor Workers' Compensation Act provides for the exclusive duties, rights and relief as between employer and employee, but this does not prevent a third party, a shipowner, from suing the employer as indemnitor for damages the shipowner may be required to pay the employee as a result of the negligence of such employer."

See also Green v. War Shipping Administration, D.C., 66 F.Supp. 393, 395, where similar language is used.

The authorities in the Federal Courts, with the exception of the Porello case in the Circuit Court, confirm and support the ruling made by Judge Peters. Therefore, his ruling was not "a clear instance of previous error", but was, as stated, in accord with the well-reasoned opinions of Federal authorities.

Does it appear that "manifest injustice" will be done unless the ruling made by Judge Peters be reopened? In the opinion of this Court a "manifest injustice" would be done by such action. It is apparent from the evidence adduced in the record, as will later be pointed out, that the injury to Davis, the employee of the Jarka Corporation, was caused by both the negligence of the respondent and the unseaworthiness of the ship. Yet the respondent, the Jarka Corporation, has not paid out a single dollar on account of the injuries sustained by its employee, either under the provisions of the Longshoremen's and Harbor Workers' Act or for any other reason. The respondent admits that in the first instance it was subject to liability under the Act for such amount as was provided by its terms, but, its employee having elected to sue the shipowner and settle for $7500, it now seeks to avoid all liability. It is to be noted that the sum of $7500 is no more than Davis could have recovered from the Jarka Corporation under the Act. Despite these facts, the respondent now claims in substance that Judge Peters' ruling should be disregarded in order to prevent the manifest injustice by causing it to pay one half of the amount which it would or might have had to pay if the employee had asserted his rights under the Act. Such a result is not manifest injustice.

This Court therefore decides that Judge Peters' ruling remains the law of the case, and the libelant is not precluded from bringing this action seeking indemnity or contribution.

The second and third questions in the case are whether the respondent's negligence contributed to the injury and whether the libelant was blameless and therefore a volunteer in settling Davis' claim against him. The situation is therefore presented where it is to the respondent's interest, according to its theory, to prove itself wholly responsible for the injury, and it is to the libelant's interest to prove that it faced a reasonable and substantial threat of liability which constituted the consideration for the settlement. Both of these positions are, to a greater or lesser extent, departures from the allegations of the

pleadings but must nevertheless be thoroughly considered.

· As for the negligence of the respondent, such is fully admitted by its proctors, on page 20 of their brief:

"* * * we find described a situation where the respondent, with full knowledge of the condition which it claims to have been dangerous, continues to discharge, in spite of that condition, when it need not have done so and failing to remedy the situation despite the fact that it appears such remedy could easily have been effected."

The facts were that the ship, at the time of the accident, had an inshore list. Cargo was being taken up from the bottom of the hold on slings which were raised by cable or falls running from a winch out to the end of a boom, and thence to the sling load. The boom was rigged at such a point that, if the ship were lying even in the water, the sling loads could be lifted out of the hold and set down on deck beside the hatch opening. The ship, however, had acquired a list, and tipped slightly, about two or three degrees, in an inshore direction, so that the bales of cargo would strike against the coamings of an intermediate deck. When this happened, and on the afternoon of the accident it frequently occurred, the chains would break and the bales would fall back into the bottom of the hold, where men were working.

The negligence of the respondent lay in its employees' continuing to unload the ship despite the fact that loads would frequently strike the between hatch coamings, with consequent danger to the workers below. ·

■ Notwithstanding this admitted conclusion, the respondent contends that the libelant was entirely free from negligence and therefore was a mere volunteer in paying money to Davis by way of settlement. This Court takes the position that it need not determine whether or not the libelant was negligent, because, on the facts before it, it adjudges the ship to have been in an unseaworthy condition at the time of the accident. Unseaworthiness is not dependent upon negligence. As Rutledge, J., stated in Seas Shipping Co. v. Sieracki, 328 U.S. 85, at page 94, 66 S.Ct. 872, at page 877, 90 L.Ed. 1099, liability for unseaworthiness "* * * is essentially a species of liability without fault, analogous to other well known instances in our law. * * * the liability is neither limited by conceptions of negligence nor contractual in character."

This Court is of the opinion that the record warrants the conclusion that there was a breach of the libelant's obligation of seaworthiness.

The relevant testimony concerning this point was developed by several depositions which have been submitted to the Court. Philip O'Reilly, Manager of the Portland branch of the respondent, testified that "The ship arrived with a list (in Portland). The ship was tender, and as more cargo was removed from the lower hold it became more noticeable." (O'Reilly deposition, p. 5.) O'Reilly also stated that the ship "shifted many times during the course of the operation" (p. 6), that when the ship had an inshore list "it was practically impossible to discharge the cargo without risk of injury to the men" (p. 6), and that he notified "the man in charge" of the ship as to its objectionable condition (p. 7). It also appeared that cargo to be discharged at Portland was stowed in the lower hold, although cargo later to be unloaded was stowed on deck (p. 9). At page 21, O'Reilly said that he thought the last "flop of the ship" before the accident, which happened around four o'clock, happened at about half past one. And on page 25 he attributed the frequent lists of the ship to the fact that most of the cargo was coming out of the lower hold with between-deck cargo still on board.

Captain Sorenson, the then Chief Officer of the libelant's ship, on which the accident occurred, in his deposition, at page 9, said that the accident occurred at about half past three, and at page 12 said that at that time the vessel had a two degree list to port.

Captain Didriksen, the then Master of the ship, in his deposition, stated that the vessel did not have a list as it arrived in Portland (p. 49) but that at about two or two-thirty o'clock on the afternoon of the accident it had developed a little list to

port (p. 50). On page 52 he admitted that the ship was listing two days before the accident, the ship being aground at low water. The list, on the day of the accident, before and after it occurred was two or three degrees, and probably not over two degrees, according to his testimony on page 61.

Mr. Lovheim, the Chief Engineer, testified in his deposition at pages 100–103 that he had observed the way in which the cargo had been unloaded prior to the accident and that almost all the loads would hit on the starboard hatch coaming, causing some of the chains to break.

Patrick Davis, the injured longshoreman, in his deposition testified (at page 3) that the vessel listed "much" and that the list made it more difficult to discharge the cargo.

From this testimony the Court finds that the ship, at the time of the accident, was listing to port from two to three degrees, and that, although this might constitute only a slight list, it helped cause sling loads which would ordinarily clear all hatch openings to collide against hatch coamings, with consequent injury to chains holding the loads. With the admitted negligence of the respondent in continuing to operate despite such a known condition, the Court is not concerned. The point at issue is whether the above facts constitute a condition of unseaworthiness, and whether such a condition at least partly contributed to the accident.

It appears from the depositions that the list had not been corrected by the time of the accident, but that, on the contrary, it was continuing to exist. It cannot be successfully urged that any unseaworthiness constituted by the list ceased to operate as a cause merely because the respondent continued to run the winch.

In The Waco, D.C., 3 F.2d 476, at page 478, the standard of seaworthiness is set forth as follows:

"A vessel must be in all respects seaworthy, which is the equivalent of the common-law duty of providing a servant or employee with a safe place to work."

In that case the ship owner's liability for unseaworthiness lay in the fact that he had not provided a staging for one who was working on a boiler cover so that were the cover to slip and fall the workman would avoid injury. The platform was low and narrow, providing no chance to escape a falling cover. In the case at bar, danger from falling obstacles stems at least partly from the list of the ship.

Unseaworthiness has been held to lie in such conditions as a slippery washroom floor, where cement or even a wooden platform were deemed inadequate for safety, especially where a slope was present. Krey v. United States, 2 Cir., 123 F.2d 1008; Radovcic v. The Princ Pavle, D.C., 45 F. Supp. 15. Certainly the list in the instant case was as great a source of danger as a slippery washroom floor.

In The H. A. Scandrett, 2 Cir., 87 F.2d 708, a seaman was injured when the doorknob on a door gave way and he fell backward on a piece of deck equipment. The shipowner was held liable, the attitude of the court being well illustrated by these words of Augustus N. Hand, J., 87 F.2d at page 710:

"The libelant is invoking a remedy based on unseaworthiness or defective condition of the vessel or her equipment. In such a case the liability for any injuries arising out of the neglect to supply a seaworthy vessel is not dependent on the exercise of reasonable care but is absolute."

This Court is of the opinion, and therefore concludes that the libelant was not a volunteer in settling the claim of the injured employee of this respondent under the circumstances herein related. The present libelant was faced in the prior case with a substantial cause of action, the issue of which might reasonably have gone against him. Settlement under such circumstances was justified.

Although the libelant has sought indemnity in this action, and although such a prayer is consistent with the assertion that he was not a volunteer by settling the prior case, this Court is of the opinion, and it so finds, that the Helgoy was, at the time of the accident, in an unseaworthy condition, which condition contributed to the accident.

It follows that the libelant and respondent must share the sum recovered by Davis, such sum being $7500, together with reasonable expenses and costs incurred by the present libelant. The allegation in the libel is that such costs and expenses amounted to $2393.23. It appearing that the respondent denies that this amount is reasonable, hearing on this point will be necessary before a final decree can be drawn.