### AMERICAN MUT. LIABILITY INS. CO. v. MATTHEWS et al.

#### No. A–18369.

United States District Court
E. D. New York.

Dec. 20, 1949.

Alexander & Ash, New York City (Edward Ash and Sidney A. Schwartz, New York City, Advocates), for libellant.

Galli & Locker, New York City (Raymond J. Scully, New York City, Advocate) for respondents.

BYERS, District Judge.

In this personam cause contribution is sought by the underwriter of the owner of the S. S. Tiradentes from the respondents stevedores for one-half of the sum paid in satisfaction of a judgment recovered by an employee of the respondents in a civil action against the owner of the ship for personal injuries suffered by the said employee while working on the ship which was afloat, plus one-half of the costs and expenses involved.

That civil action was in a state court, and the defendant therein (libellant in effect here) gave timely vouching in notice to these respondents whereby they were requested to "take over the defense of the said pending action * * * and * * * indemnify and save harmless" the owner of the ship from any and all demands, judgments, costs and expenses in connection with said action.

The respondents (hereinafter to be referred to in the singular) ignored the notice; the case went to trial, and resulted in judgment as has been stated. The ver-

dict established that the employee was injured as the result of the breaking of a rope, part of the ship's tackle, which was used by the stevedore in handling cargo aboard the ship; specifically, that the rope was in faulty condition on the 8th day of May, 1944, when such operations began, and that the fault was then apparent and would have been disclosed upon reasonable inspection, although the accident did not occur until May 26, 1944.

The question for decision is whether the stevedore can be held liable for contribution upon the theory that, since the fault was apparent, the duty to discover it rested as well upon the stevedore as the ship, and for failure to discharge that duty, it must reimburse the ship (i. e., its underwriter) to the extent now asserted.

The facts are undisputed, the evidence being documentary only, which dispenses with the necessity for findings, since only a question of law is presented.

The injured man brought his lawsuit against the owner of the ship instead of taking compensation under Section 903 of the Longshoremen's and Harbor Workers' Compensation Act, Title 33 U.S.C.A. § 901 et seq., and it is argued that the stevedore employer may assert immunity from the recovery here sought because Section 905 of the Act provides that the statutory liability of the employer is exclusive and in place of all other liability to " * * * anyone otherwise entitled to recover damages from such employer * * * on account of such injury".

The point is somewhat troublesome, for while contribution among tort-feasors is said to have existed since 1875 in the admiralty, Barbarino v. Stanhope S. S. Co., 2 Cir., 151 F.2d 553, and as a substantive right, The Ira M. Hedges, 1910, 218 U.S. 264, 31 S.Ct. 17, 54 L.Ed. 1039, 20 Ann.Cas. 1235, this statute was enacted in 1927, and the scope of the exculpatory language in respect of contribution has not been defined in this Circuit; see Porello v. United States et al., 2 Cir., 153 F.2d 605, at page 609 (Petition for rehearing). That case seems to have turned upon the meaning of a contract of indemnity (See, American Stevedores, Inc. v. Porello, 330 U.S. 446, at page 456 et seq., 67 S.Ct. 847, 91 L.Ed. 1011).

There is an apparent anomaly involved in the concept of freedom of the stevedore from tort liability to his employee, and a coexisting liability to his accomplice in the commission of the tort, to respond to the latter for contribution to the damages occasioned by their joint behavior.

Perhaps the subject is not squarely presented by this record, since the stevedore has not responded in damages to his employee, thereby discharging the liability which Section 905 declares to be exclusive.

If the respondent's argument is understood, it is that the creation of the primary duty to pay compensation is to be thought of as dissolving or removing the responsibility for contribution which otherwise would be present, notwithstanding the failure of the injured man to seek or receive that compensation.

Several District Court decisions, cited by libellant, are to the effect that the right to contribution among tort-feasors persists in spite of the provisions of the Longshoremen's Act: The Tampico, 45 F.Supp. 174; The S. S. Samovar, 72 F.Supp. 574, at page 588; Coal Operators Cas. Co. v. United States et al., 76 F.Supp. 681; Rederii v. Jarka Corporation, 82 F.Supp. 285; Portel v. United States et al., 85 F.Supp. 458.

The decisions in The Chattahoochee, 173 U.S. 540, 19 S.Ct. 491, 43 L.Ed. 801, and Aktieselskabet Cuzco v. The Sucarseco et al., 294 U.S. 394, 55 S.Ct. 467, 79 L.Ed. 942, are cited in some of the above cases; while other statutes were before the Supreme Court in these two instances, a parity of the reasoning adopted assists in determining the apparent scope of Section 905 of this Act as applied to the claim which this libellant seeks to enforce.

■ The right to contribution, as recognized in the admiralty, arises directly from the tort, and is not dependent upon any theory of subrogation to the claim of the injured man against his employer.

Those decisions will be followed here with deference to the reservation announced by the Court of Appeals for this Circuit in disposing of the petition for rehearing in the Porello case, supra.

■ This means that the libellant is not foreclosed of its right to seek contribution from the stevedore by reason of the provisions of Section 905 of the Longshoremen's etc. Compensation Act.

Turning now to the question of how far the respondent is concluded by the litigation in the State court, it is necessary to pass upon the following questions:

A. The efficacy, as a matter of form, of the vouching in notice.

The argument for the stevedore is that the notice was of no effect since it called upon the latter to take over the defense of the action on behalf of the ship owner, and that "you (these respondents) indemnify and save harmless the undersigned from any and all demands, judgments, costs and expenses in connection with the said pending action and the defense thereof".

It is urged that the stevedore is here sued as a joint tort-feasor, and not as an indemnitor, and that under the substantive common law of New York, the right to contribution did not exist, and so the notice must be deemed a nullity.

■ If the common law controlled, this reasoning would be formidable; however, the law of New York is that as to maritime torts the courts of the State "look to the decisions of the Federal courts to define the liabilities of ship owners" (Riley v. Agwilines, Inc., 296 N.Y. 402, 73 N.E.2d 718, 719) in deference to Robins Dry Dock and Repair Company v. Dahl, 266 U.S. 449, 45 S.Ct. 157, 69 L.Ed. 372.

■ It results therefore that the vouching in notice would have been effectual as to the right to contribution between tortfeasors according to the principles of maritime law which the State court would have been required to enforce, unless it be regarded as defective in form for employing the word "indemnify".

■ The right to indemnification arises from the violation of a primary duty, Standard Oil Co. v. Robins Dry Dock & Repair Co., 2 Cir., 32 F.2d 182, at page 184, and the right to contribution from a joint tortfeasor is also primary in that it arises from the tort, as has been stated above. A discussion of this subject will be found in George's Radio, Inc., v. Capital Transit Co., 75 U.S.App.D.C. 187, 126 F.2d 219, at second column on page 222.

■ The rights of these parties should not be made to turn upon a mere matter of form unless it appears that, because of the language chosen by the one giving the notice, the other can be seen to have refrained from acting, to its own detriment. In other words, whether the stevedore can be thought to have ignored the notice to indemnify the ship owner for the latter's conduct, while it might have intervened to prove that there was no negligence on its own part, had it been charged therewith.

Which means that this is not a dispositive aspect of the controversy.

B. The efficacy of the vouching in notice as a matter of substance.

This presents a searching question, the argument being that the stevedore was not put on notice that any issue of its own neglect would be litigated, and hence it is not here concluded by the verdict of the jury holding the owner of the ship at fault.

The negligence alleged according to paragraph Twelfth of that complaint was: "That the defendant, in furnishing a defective guy rope, failed to give the plaintiff a safe and sufficient place in which to do his work; failed to make an inspection of the guy rope which would have disclosed its unsuitability and defective condition. * * * in furnishing a rope not customarily used * * * in that the said rope was not strong enough, and unsuited to bear the strain placed upon it".

Paragraph Eleventh alleged that plaintiff was on the vessel on the day in question "in the employ of a firm other than the defendant and *upon the business which was of mutual interest to the defendant and the plaintiff's employer,* he was seriously injured caused by the negligence on the part of the defendant, *its agents,* servants and/or employees * * *". (Italics supplied.)

A copy of that complaint was attached to the vouching in notice, so the quoted allegations were in fact made known to the stevedore.

The latter was thus apprised that its employee was engaged in performing a task of mutual interest to it and the ship, at the time of the injury, and it chose not to intervene and demonstrate either that the task was not of mutual interest, or that its own part in it was free from negligence.

■ Further, it seems reasonable to say that the stevedore had notice that its own handling of the mutual task might come into question, in that the alleged negligence was not only attributed to the owner of the ship, but to its "agents". The stevedore can be thought of as an agent of the ship in the handling of cargo. In Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, at page 96, 66 S.Ct. 872, 878, 90 L.Ed. 1099, the following appears: "Historically the work of loading and unloading is the work of the ship's service, performed until recent times by members of the crew." From this it would follow that the stevedore who is hired by the ship to perform that service is sufficiently its agent in handling cargo, to be comprehended within such an allegation as has been quoted from this complaint, which refers to the negligence of the ship owner's agents.

These considerations are vital to the question of the extent to which the stevedore is bound by the State court judgment. It is common ground that, as to the defect in the rope, the fact of injury and freedom from contributory negligence, the liability of the ship owner and the amount of damages, nothing is open to inquiry in this cause.

The argument is that the stevedore's participation in the negligence was not litigated, and consequently was not decided, whereby its status as a joint tort-feasor has not been established.

This libel alleges (Paragraph Eighth), and the respondents deny, that the injuries were the result of "the negligence, fault and improper use of a line, rope, or guy-line being used aboard the said vessel on said 26th day of May 1944, by respondents * * *".

This Court is thus required to ascertain to what extent that question may be deemed to have been determined in the action in which the stevedore declined to participate.

The charge in the State court is here in evidence and reveals that there were clearly put before the jury the following propositions:

1. Was the guy rope defective on May 8th, 1944?

The verdict must be deemed to have answered in the affirmative.

2. Was the defect such that it could have been revealed by reasonable inspection, or was it latent?

The verdict must be deemed to have answered that the defect could have been so revealed and therefore was not latent.

As to possible negligence of the stevedore subsequent to May 8th, the trial justice stated that the ship owner could be held only for its own negligence, and that its duty to the plaintiff was to supply a rope in good condition on that day. He said: "If it became defective subsequent to that date because of the manner in which it was used by the stevedores, this defendant is not to be held responsible to this plaintiff under those circumstances."

■ The verdict means that the rope was defective on May 8th and therefore subsequent defects, however caused, were not the subject of the jury's finding.

But this does not exclude concurrent negligence by the stevedore on May 8th in failing to discover that which, according to the verdict, could have been revealed by reasonable inspection, namely, the defective condition of the rope. If it was defective as to the ship, it was equally so as to the stevedore.

Failure to inspect may give rise to liability, as has been decided in the following cases:

New York & Porto Rico S. S. Co. of New York v. Lee's Lighters, Inc., D.C., 48 F.2d 372:

Contribution awarded against owner of lighter which furnished the equipment for discharge of cargo from libellant's ship, there having been a recovery in a State court action against the libellant, based upon the use by it of faulty tackle on the lighter. The opinion says, 48 F.2d at page 375: "The libelant was negligent in allowing the plaintiff (the injured man) to work with a fall so clearly old, worn, rusty, and kinky * * *; which condition, on the testimony of the witnesses in the state court case, must have been plainly apparent on any reasonable inspection, and the libelant and respondent are in pari delicto."

While this applied to failure to inspect the lighter's equipment by her owner, which is the reverse of the situation here, it is consistent with a mutual duty of that nature.

Port of New York Stevedoring Corporation v. Castagna, 2 Cir., 280 F. 618, 620:

. Here the employee of the stevedore was injured as the result of being struck by dunnage piled improperly in the 'tween deck, and his recovery against his employer was sustained on appeal. The opinion discusses the duty of the stevedore to inspect and says: "Defendant made no inspection whatever of the dunnage, and yet the slightest inspection might have disclosed the fact of the existence of this rotten piece of wood * * *." In contrasting the facts involved with the decision of Liverani v. John T. Clark & Son, 231 N.Y. 178, 131 N.E. 881 (relied upon by the respondents here), the Court quoted from that opinion as to the hidden nature of the defect in the ring bolt of the ship there involved, in part as follows, 280 F. at page 620:

" '* * * In the absence of any condition to excite suspicion, or to suggest defects or danger, the stevedore might assume the safety of the appliances, and that due care had been used by the shipowner to keep and maintain them in reasonably safe condition. * * *

" 'This does not mean that the stevedore could use the tackle or the ship's parts blindly and without looking at them, but that, if appearances indicated no danger or defects, an inspection by tests for latent imperfections was not required of it. * * * * ' "

By way of disposing of the matter, our then Circuit Court of Appeals stated: "In brief, and without further analysis, there is nothing in the Liverani Case, which negatives the necessity (on the part of the stevedore) of inspection."

The recent citation of this case in Gucciardi v. Chisholm et al., 2 Cir., 145 F.2d 514, at page 516 indicates that it is currently accepted as stating the applicable law.

The jury has decided that the defect in this rope was not latent; the inference is inescapable that the ship supplied, and the stevedore used, a defective piece of equipment which caused bodily injury to the plaintiff in the original cause.

■ If that is true, it would seem to follow that whether this stevedore in fact made an inspection was unimportant, since it is chargeable with what a reasonable inspection would have revealed.

It becomes necessary now to revert to the vouching in notice in order to consider the effect of its being ignored by the stevedore. Manifestly the circumstances involved were fully known to it at the time of the accident, since the injured man was its employee, and was acting under its supervision and control. This means that its own knowledge of all relevant facts was contemporaneous with that of the shipowner, and was at least as extensive and detailed. Therefore the notice did not call upon it to participate in a legal situation involving an unfamiliar episode of remote occurrence.

The election to remain aloof was therefore a completely informed one.

The vouching in process in the State court was well established and understood, though not of statutory origin. It is discussed and its limits defined in Hartford Accident and Indemnity Company v. First National Bank, 281 N.Y. 162, 22 N.E.2d 324, 327, 123 A.L.R. 1149, and contrasted with the then provisions of Section 193,

Subd. 2, of the Civil Practice Act relating to third party practice—whereby in this case the shipowner could have applied for an order to bring in the stevedore as one liable "wholly or in part for the claim made" against it.

The Court decided that the vouching in practice in the case before it was insufficient apparently where it rested upon a notice to defend given by a savings bank defendant which was sued by its depositor for having charged her account with a draft which it had issued to her against the First National Bank, upon which her purported indorsement had been forged. The draft, as so indorsed, had been presented to the First National Bank, by Farmers National Bank which had received it from one White. The vouching in notice had been given to the Farmers Bank, in the action by the depositor against her savings bank.

The relationships as the Court stated them were: Savings Bank to depositor, simple debt. Farmers Bank to First National Bank, warranty of genuineness of indorsement.

Thus the issue of forgery of the draft was foreign to the depositor's action against her own bank, for the Court says:

"There was no obligation of Farmers National Bank to the Savings Bank in respect of the loss resulting to the Savings Bank in the Gaddis (depositor) action. * * * there was no right of the Savings Bank to impose upon Farmers National Bank a duty to defend the Gaddis action. * * *

"A named defendant who would have another (not yet a party) bound by judgment in an action must by proper notice offer to him control of the defense of the litigation. (Citing cases.) The essential factors of this process of 'vouching in' are hard to define. Resort to them has often provoked a new controversy as to the adequacy of notice and opportunity to defend (citing cases) * * * But however that may be, we think there is no compelling reason why a procedure so perplexing and inexact should now have operation outside its presently existing limits."

The Court goes on to discuss how the third party practice could have been employed to advantage in that case.

Here the libellant excuses its failure to do that very thing by stating in its reply brief that it would have done so if it had realized that the State court would consider itself bound to enforce the principles of maritime law, in dealing with a maritime cause, as it later did in Riley v. Agwilines, Inc., supra.

There seems to be no necessity for making a fetish of procedural niceties at the expense of substantive rights, so far as this cause is concerned.

The teaching of the Hartford case, supra, as here applied, seems to be that, if the issue of the stevedore's neglect to inspect the offending guy rope was present in the original case, the vouching in procedure was adequate to settle that question for present purposes; if it was not, the contrary would be true.

This means that, a maritime tort having been alleged, the State court would have been required to deal with the case according to the concepts of maritime law, including contribution among joint tort-feasors, and it has been the effort to show that the complaint did in fact allege, as against one defendant, the omission of a duty concerning a task which was "of mutual interest" to the ship's owner, and to the employer of the plaintiff. Under those circumstances, the stevedore could have taken over the defense and sought to demonstrate that there was no negligence attending the performance of the task of handling the ship's cargo, specifically that the rope was not patently defective.

The stevedore's decision not to do that was the exercise of a deliberate choice, the incidents of which can not now be avoided. In addition, therefore, to the issues which it concedes were established as a basis for the plaintiff's judgment, there was the additional one that the defect in the rope would have been apparent upon reasonable inspection. Since the duty to inspect was mutual, the stevedore must be

deemed to be accountable for its own failure, and hence is liable in this cause for contribution to its joint tort-feasor who has thus far borne the entire financial burden of the common fault.

 It is to be remembered that the stevedore did not seek to introduce any evidence in this Court to establish its freedom from negligence, but rested upon what it regards as the infirmity of the record of the State court action. In this situation it seems that the libellant is entitled to the most favorable inferences to be drawn therefrom.

*The extent to which contribution can be here decreed:*

The rule that each tort-feasor shall pay a moiety of the damages (American Stevedores, Inc. v. Porello et al., supra, 330 U. S. 446, at page 458, 67 S.Ct. 847, 91 L.Ed. 1011) will be applied, which means that respondent is to pay $7500.00, being one-half of the amount paid in settlement of the State court judgment, with interest from the date of payment.

The libellant here sues by virtue of the subrogation clause in its policy insuring the ship owner, which creates its standing in this cause (Exhibit 4), reading as follows:

"11—Subrogation.

"In the event of a loss to which this policy applies, the company, at its own expense, shall have the right to proceed in the name of, and in behalf of, the insured, to recover whatever may be due the insured from another on account of such loss, and the company shall be reimbursed from, or given credit for, any recovery obtained by the insured against such other."

 In terms, the foregoing covers only the said sum of $7500.00 which necessarily excludes about $1133.76 representing one-half counsel fees and disbursements paid in connection with that trial. It is urged by libellant that it would be fair and equitable to add these sums, which are agreed to be fair and reasonable, to its recovery, as was apparently contemplated in Rederii v. Jarka Corporation, D.C., 82 F.Supp. 285, and I should do so if the requisite power were present, but the sub-

rogation clause seems to forbid any such construction. Cf. Wanamaker v. Otis Elevator Co., 228 N.Y. 192, 126 N.E. 718.

Decree is accordingly directed for libellant, in accord with this decision, to be settled on notice.