## NEDERLANDSCH AMERIKAANSCHE STOOMVAART MAATSCHAPPIJ v. STEVEDORES' & LONGSHOREMEN'S BENEV. SOC. et al.

(District Court, E. D. Louisiana, New Orleans Division. April 6, 1920.)

No. 16156.

**1. Contracts ⏾153—Given reasonable construction, and so as to uphold validity, if possible.**

Though a contract between labor unions and a number of employers regulating wages and terms of employment was inartificially drawn, and imposed no obligation on the unions to furnish labor, it must be given a reasonable construction, and such as to maintain its validity, if possible.

**2. Trade unions ⏾8—Under contract with employers' union liable for members' refusal to work.**

A contract between labor unions and a number of employers regulating wages and terms of employment, and absolutely binding the employers to

⏾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

employ none but members of the unions, if such members were available, imposed the reciprocal obligation on members of the unions to work according to the contract in good faith; and the unions were responsible for the action of a considerable number of their members in refusing to unload a ship for one of the parties, unless paid more than the contract rate of wages.

3. **Trade unions ☞9—In action for breach of contract, testimony of union foreman held conclusive.**

In an action against labor unions for breach of a contract regulating wages and terms of employment, the testimony of the employer's foreman, a member of the union, that nonunion men would not work when union men were on strike, *held* conclusive under the circumstances.

4. **Damages ☞62(4)—Damages which might have been avoided not recoverable.**

Though a ship, which members of a union refused to unload unless paid more than the wages provided in a contract with the union, was thereby delayed, and demurrage accrued, the recovery for the breach of contract should be confined to what it would have cost for additional wages to unload the ship at the rate demanded, as the damages might have been avoided by paying the wages demanded.

In Admiralty. Libel by the Nederlandsch Amerikaansche Stoomvaart Maatschappij against the Stevedores' & Longshoremen's Benevolent Society and another. Decree for the libelant.

Terriberry, Rice & Young, of New Orleans, La., for libelant.
McCloskey & Benedict, of New Orleans, La., for respondents.

FOSTER, District Judge. Libels in personam were filed by the Nederlandsch Amerikaansche Stoomvaart Maatschappij, better known as the Holland-American Line, against the Stevedores' & Longshoremen's Benevolent Society and the Longshoremen's Protective Union Benevolent Association, to recover damages for an alleged breach of contract. Exceptions to the jurisdiction of the court to entertain the suits in admiralty were overruled. The causes were then consolidated by consent for trial on the merits, and the evidence was heard in open court. The facts will appear in the course of the opinion.

The respondents are incorporated under the laws of Louisiana, for the purpose, among others, of regulating the time and fixing the price of labor of their members for working on the levees of New Orleans. One association is composed entirely of white men, and the other entirely of colored men. The respondents entered into a contract with all of the ship agents and employing stevedores at the port of New Orleans, for a period of three years, beginning September 16, 1917, fixing the hours of labor and the price per hour, with provisions for extra pay for certain cargoes, time and a half and double time for night and Sunday work, respectively, and adopting many rules and regulations regarding working conditions, with the provision that work should be divided equally between the two associations.

On November 22, 1919, the national adjustment commission awarded increases of wages and reduction of hours of day work, to wit, 80 cents per hour regular time, $1.20 per hour overtime, and $2 per hour Sunday work, and limiting regular hours to four on Saturday

and Sunday and eight hours on other days. The award also provided certain differentials, generally 10 cents additional per hour for handling certain kinds of cargo, which do not affect this case. It further provided that the contract between the New Orleans ship agents and stevedores and the respondents should remain in full force and effect, except as modified by the award. This award was ratified by general meetings of the respondents.

By the terms of the contract the stevedores are required to hire members of the respondent unions as foremen, and the ship agents and stevedores agree to employ only members of the unions, if they are available. There are not enough members of the unions to do all the work on the docks, so nonunion laborers are usually employed in addition. The members of the unions pay 5 per cent. of their daily earnings to the union in lieu of dues. For some unexplained reason the unions also collect 5 per cent. from the nonunion men, though they receive no benefits. Employment is conducted as follows: The foreman, who is a member of the union, hires the men. If sufficient union men are not present, he supplies the deficiency with nonunion men; but as soon as a union man appears and demands a job he discharges a nonunion man instantly, though he may have made but part of an hour, and employs the union man in his place.

On December 17, 1919, the steamship Amsteldijk, owned by libelant, arrived at New Orleans, partly loaded with kainit in bulk and consigned to the Texas Transport & Terminal Company. Libelant is not named as a party to the contract, but the Texas Transport & Terminal Company is, and was then and now, agent for libelant at New Orleans. About 17 men, nearly all members of the respondents, were employed in unloading the kainit from the vessel, and worked until the usual time of quitting on Saturday, December 20, at the contract rate of 80 cents per hour. On Monday the same men refused to continue unloading the kainit unless paid 90 cents per hour. Kainit is not included in the differentials, and the rate is 80 cents per hour for unloading it. The ship declined to pay 90 cents per hour, and the Texas Transport & Terminal Company notified the presidents of the unions to furnish men at the contract rate. The presidents of the unions made some effort to induce the men to resume work, but without avail, and then notified libelant's agent it might employ nonunion men. The ship was delayed in unloading some seven days, by which time general meetings of the unions were held and resolutions adopted ordering the men to resume work, which they then did, and about 45 men were employed day and night unloading the kainit. Libelant is suing for demurrage for the seven days' delay.

It is contended on behalf of respondents that the contract is unilateral and void for want of mutuality; that libelant was under no obligation to send its ships to New Orleans and furnish work for respondents' members; that respondents are not bound to furnish labor at all; that the action of certain members in quitting was their action as individuals, and the unions cannot be bound in any event by them, as the officers of the union did not order or approve of their quitting; that nonunion labor could have been hired to do the work,

and libelant's agent was so notified; and that libelant has failed to minimize its damages.

[1, 2] The contract is inartificially drawn and in terms imposes no obligation on respondents to furnish labor. It must be given a reasonable construction, however, and so as to maintain its validity, if possible. The contract absolutely binds all of the ship agents and employing stevedores of the port of New Orleans to employ none but members of the respondent unions, if they are available. By it the respondents establish the principle of collective bargaining, obtain the closed shop, 44-hour week, extra rates of pay for overtime, and their own working conditions, all that union labor, so far, has ever contended for. I think the contract is valid, and imposes the reciprocal obligation on respondents to work according to the contract in good faith. There is no doubt the action of the men was arbitrary and amounted to a breach of the contract.

[3] It is shown that the officers of the unions have no control whatever over the members. There is no provision in the by-laws by which they may be suspended, or expelled, or disciplined in any way, for refusing to abide by the contract. The contract and the award of the national adjustment commission were not accepted and did not become binding on the unions until ratified by general meetings of all the members. It is shown that some of the men who quit work did not seek employment elsewhere, but remained in the vicinity of the vessel. The foreman, a member of the union, did not seek to employ nonunion men. He testified nonunion men will not work when union men are on strike. The action of the union men in this case had all the elements of a strike. Considering the control exercised over the nonunion men, the fact that the foreman was a member of the union, whom the stevedore was forced to employ, and that union men were available, though unwilling to work, I think the testimony of the foreman is conclusive, though there is some testimony of a general character that nonunion men might have been secured. Under these conditions the respondents are responsible for the action of a considerable number of their members, as here shown.

[4] This brings up the question of damages. Undoubtedly the ship was delayed and demurrage accrued; but this might have been avoided by paying the extra wages demanded. The recovery should be confined to what it would have cost for additional wages to unload the ship at the rate demanded. As the evidence is not certain on that point, the case will be referred to a commissioner to ascertain the damages. Libelant to have a decree for that amount, with interest at 5 per cent. from date of decree until paid. Respondents to pay all costs, to be divided between them equally.