828

## AMERICAN–HAWAIIAN S. S. CO. v. SAILORS UNION OF THE PACIFIC.

### No. 23184–R.

District Court, N. D. California, S. D.
April 1, 1941.

Brobeck, Phleger & Harrison, of San Francisco, Cal., for libelant.

Albert Michelson and Herbert Chamberlin, both of San Francisco, Cal., for respondent.

ROCHE, District Judge.

This is an action for breach of contract. Libelant, American-Hawaiian Steamship Company, seeks to recover damages caused by respondent, Sailors Union of the Pacific, in delaying the sailing schedule of the Steamship "Montanan".

Libelant has alleged that respondent, thru the conduct of the crew of the Steamship "Montanan" in walking off the ship at the ports of Tacoma, Washington and San Pedro, California, violated the provision in the collective bargaining contract of October 10, 1939, whereby the parties agreed that "there shall be no strikes, lockouts or stoppages of work during the period of this agreement for any cause" (Section 12). Libelant further has alleged that respondent, by failing and refusing to obtain a crew for the Steamship "Montanan" after respondent members had walked off the ship, committed a breach of the clause in the contract under which respondent agreed "to furnish capable, competent and satisfactory employees" (Section 3). Respondent has denied these allegations.

There are two issues before this court: 1. Did respondent members strike or stop work; 2. did respondent fail to furnish employees as required by the collective bargaining contract?

Despite the joinder of issues between libelant and respondent, the evidence establishes the fact that there was a work stoppage within the meaning of the contract between libelant and respondent. See The Cogne, D.C.1927, 20 F.2d 698, 701; and Transcript, p. 233.

What does the record disclose as to the efforts of respondent to replace the crew after they had stopped work in violation of their contract? The evidence shows that respondent tried to get the crew of the Steamship "Montanan" to return to their work. Respondent held meetings, attended by libelant, for the purpose of inducing the old crew to man the ship. Respondent made frequent telephone calls to members of the crew, asking them to return to their posts. Upon request of libelant for replacements, respondent posted notices in the union hiring hall. But because of the season of the year (the Christmas holidays), and because of the demands of the high-paying Alaskan trade for sailors, there was a shortage of men— and none were available at the hiring hall. (It was a realization of this shortage, by both libelant and respondent, that accounts for the concerted drive to persuade the old crew to return to work. As a result of these efforts, the crew went back to the ship.) Respondent acted in good faith in striving to induce the crew of the Steamship "Montanan" to go back to their posts, and in trying to obtain other sailors for the tied-up vessel while negotiations were pending between libelant and respondent. Such conduct by respondent is all that the contract requires when it asks the Sailors Union of the Pacific to furnish employees; and the union was not responsible for the delay in sailing. Respondent cannot compel men to work; it can only point out available positions to its mem-

bers and try to persuade them to take such work. If respondent does this—as it has done in the case at bar—it complies with its contract obligations.

The testimony before the court establishes the fact of a work stoppage in violation of section 12 of the collective bargaining contract. For this violation, respondent is liable, and must be assessed the costs of this suit. But respondent lived up to its contract duties under section 3 of the contract. It cannot be held liable in damages for the delay in sailing of the Steamship "Montanan".

A decree will be entered in favor of libelant for costs, upon preparation of findings of fact and conclusions of law.