McBRIDE, Judge.
This is a suit by 891 colored nonunion longshoremen (colloquially referred to as “rabbits”) against their ex-employer, T. Smith & Son, Inc., ■ and the International Longshoremen’s Association, Local 1419 (hereinafter - referred 'to as the “Union”), for recovery of sums deducted from their weekly pay as assessments and paid by T. Smith & Son, Inc., into the treasury of the Union. The original suit was filed by 619 plaintiffs; subsequently 272 additional longshoremen joined the suit by way of intervention. Each group claims recovery of the deductions made during a .five-year period preceding the filing of their claim. The material allegations are that plaintiffs were employed as longshoremen by T. Smith & Son, Inc., during the period mentioned ; that they were not members of the Union; . that they did not authorize any deductions of assessments or percentages to be paid to the Union, but that nevertheless this was done and they were thereby deprived “of their lawfully earned wages.” Each claimant alleges that during the five-year period a total of more than $300 was ■so deducted from his wages, and each prays for a judgment in the sum of $300; the .aggregate amount claimed is $267,300.
After the court had disposed of various preliminary exceptions and pleas now no longer material, the defendants pleaded their defenses on the merits by substantially similar pleas and answers; they filed pleas of prescription of one year and estop-pel. The answers set forth that at the time •of employment it was well understood by T. Smith & Son, Inc., and its employees that the usual deductions would be made for union assessments and that as the employment was entered into with this understanding, it was one of the terms and conditions of the employment; that since there was a natural obligation on the part of the ••claimants, as well as all other longshoremen, to contribute to the support of the Union which had negotiated, supervised, and enforced the port-wide labor contracts under which they were working, they could not recover the sums which by way of deduction were paid in discharge of this obligation. • :
To quote from the answers:
“ * * * defendant denies that it.. withheld any part 'of the earnings any of the plaintiffs were entitled to receive. Defendant shows that all of its colored longshore employees, includ- . ing such of plaintiffs as may have worked for it, at all times well knew that 5% of their earnings would have to be paid by them to the Union; that this was the requirement and practice. of the Union and applied to all such employees whether Union or non-Union; that the Union in question, International Longshoremen’s Association Local 1419, was at all of the times mentioned in the petition the sole and lawful bargaining agent for all of the defendant’s colored longshore employees, including both Union and non-Union employees, and had been duly and lawfully certified as such by the National Labor Relations Board after an election of the employees; that at all of the times mentioned in the petition, there was in full force and effect a labor contract between International Longshoremen’s Association Locals 1418 (white) and. 1419 ‘(colored) and the employers of Longshore labor at New Orleans, including this defendant, which contract contained among other provisions the following:
“ ‘Only members of Locals 1418 and 1419 shall be hired in any capacity in the loading and unloading of ships under this contract1;
that said contract and said clause were entirely lawful; that notwithstanding same said .I.L.A. Local 1419 at times permitted Non-Union longshoremen, to work as longshoremen on the riverfront on condition that they pay to the Union the same assessment as the Un *895 ion members; that said requirement wás lawful and reasonable inasmuch as said Union was the bargaining agent and representative of all such employees, non-Union as well as Union; that none of the plaintiffs have ever objected to the payment of said 5% of earnings to the said Union and never informed -the defendant of any objections thereto and had repeatedly acquiesced in said payments and had accepted such employment on said terms and conditions and received the benefit of the Union activities in their behalf ; that the collection of said 5% by the Union was lawful and that defendant’s sole connection with the collection of said dues was to cooperate with the Union by allowing the said collection of dues to be made at the- pay tabid at the time of payment. ■ Defendant shows that plaintiffs are, therefore, estopped to claim recovery of .such assessments paid to the Union, and defendant specially pleads said estoppel in bar of this action.”
The matter was referred to the Commissioner of the -Civil District Court in accordance with LSA-R.S. 13:1171. In due course the Commissioner rendered his report to the court recommending that the suit of the original plaintiffs, as well as the suit of the intervening plaintiffs, be dismissed for the reasons set forth in the report. The court then being of the opinion that the recommendations of the Commissioner should be adopted, rendered judgment dismissing all claims. The plaintiffs and intervenors took devolutive appeals to the Supreme Court which transferred the matter to us. 222 La. 1061, 64 So.2d 432.
In the year 1938 the National Labor Re--lations Board issued an order recognizing the Union -as the bargaining agent of the colored longshore employees of T. Smith & Son, Inc., and by virtue of that order of recognition, the Union became the sole bargaining agent for all employees of T. Smith & Son, Inc., without regard to membership or nonmembership in the Union. See Section 9(a) of the Wagner Act, Title 29 U.S.C.A. § 159(a).
The evidence shows beyond any shadow of a doubt that the practice of deducting a percentage of the earnings of nonunion as well as union longshore workers and turning the same over to the union has prevailed on the river front of New Orleans for generations. The paymaster of T. Smith & Son, Inc., testified that he started to work in that capacity in 1919, and that the practice and custom then existed and from records in his office he knew that it antedated 1919. The late Judge Rufus E. Foster of the U. S. District Court for the Eastern District of Louisiana, in the course of his opinion (April 1920) in the case of Nederlandsch Amerikaansche Stoomvaart Maatschappij v. Stevedores’ & Longshoremen’s Benev. Soc., 265 F. 397, 399, made mention that “For some unexplained reason the unions also collect 5 per cent, from the nonunion men”. Thus the practice was observed at least as. far back as thirty years before the commencement of plaintiffs’ employment, and the practice and custom exists not only in New Orleans but at other Gulf and South Atlantic ports. The evidence further shows that the custom and practice was a matter of common and general knowledge on the river front at New Orleans.
After twenty-four of the claimants had given their testimony, counsel for the respective parties' entered into a stipulation as to how the other claimants, would testify if they were to be placed on the witness stand. Neither does the testimony nor the stipulation among counsel reflect that the claimants did not know when they commenced employment with T. Smith & Son, Inc., that the customary deduction for the Union would apply to them. In a light most favorable to the claimants, all that can be said is that the matter of the deductions was not discussed with them by T. Smith & Son, Inc., and that they were not specifically notified that the five, per cent deduction would apply to their wages. Nowhere, is it pretended that the claimants were misled by T. Smith & Son, Inc., or the Union. Even if it can be assumed that the claimants had no actual knowledge of the custom and practice, which we doubt, it was *896 brought home to them most forcibly at the end of the first week’s employment when they received their wages less the deduction. The record shows that some of the claimants worked intermittently for T. Smith & Son, Inc., and it necessarily and indisputably follows that on each recurrent employment they . thoroughly, understood that the five per cent deduction was one of the terms and conditions incident to the employment which, they undertook.
LSA-C.C. art. 1797 reads in part thus:'
“When the -parties have the legal capacity'to form a contract, the next req-r uisite to-its validity- is their consent.. This being a mere operation of the mind, can have no effect; unless it be : evinced in some manner that shall-cause it to be undérstood by the other parties to the.contract. * * *”
LSA-C.C. art. 1809 reads'as follows:
■ “The obligation of a contract not. being complete, until the acceptance,-or in cases'where it is implied by law, until the circumstances, which raise such implication, - are known to the party proposing.; he may therefore revoke his offer or proposition before such acceptance, but not without allowing such reasonable time as from the terms of his offer he has given, or from the circumstances of the case he may be supposed to have intended to give to the party, to communicate his determination.”
LSA-C.C, art. 1811 provides.:
“The proposition as well as the assent to a contract may be express or implied:
“Express when evinced by words, either written or spoken;
“Implied, when it is manifested by actions, even by silence or by inaction, in cases in which they can from circumstances be supposed to mean, or by legal presumption are directed to be considered as evidence of an assent.”
LSA-C.C. art. 1816 reads in part:
. “Actions without words, either written or spoken, are presumptive evidence of a contract, when they are done under circumstances that naturally imply a consent to such . contract, )(c }j< ‡ 99
LSA-CC. art. 1817 provides in part': 1
“Silence and inaction are also, under some circumstances, the means of showing an assent that creates an obligation; - * * : v
There is no question that all of the claimants without protest of. any kind accepted their wages from week to week fully cognizant .of the-fact that-the five per cent deduction had been made therefrom and would, be turned over to the Union. The deduction was an integral part of the contract of employment to which the claimants assented, as is manifested by their silence and inaction. The matter of the 'five per cent deduction was as much a part of the contract of employment as was the stipulation for an hourly wage rate.
Whether the practices in vogue on the river front with reference to the employment of longshore labor are vicious ones is not for us to say, for the claimants chose to work for years under the conditions.
Apropos here is the old axiom of law that no man can complain of a state of affairs which he could have prevented or terminated at any time.
For the reasons above set forth, the judgment appealed from is affirmed.
Affirmed.