**UNITED STATES LINES COMPANY et al.**

**v.**

**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION (AFL–CIO) and its Affiliated Locals 799, 800 and 805 et al. (three cases).**

Nos. 64-32, 64-52, 64-53.

United States District Court
D. Massachusetts.

March 22, 1967.

Leo F. Glynn, Boston, Mass., for plaintiffs.

Nathan Greenberg, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

GARRITY, District Judge.

The plaintiffs in these three proceedings in admiralty seek to recover damages against the defendant longshoremen's union, its affiliated locals and certain union officers and members for breaches of a collective bargaining agreement for the unloading of ships in the Port of Boston. The agreement was executed both by the International Longshoremen's Association (AFL-CIO) and its affiliated Locals 799, 800 and 805. Plaintiff Boston Shipping Association, Inc., represents waterfront employers in collective bargaining and negotiated the agreement with the union. Plaintiff United States Lines Company owns and operates the ships carrying cargoes of hides which the defendants refused to unload. Plaintiff Nacirima Operating Company, Inc., a stevedoring contractor, employed the longshoremen who refused to unload the hides.

In answers and exceptions filed in each case, the defendants set up the defenses of lack of jurisdiction over the subject matter, failure to state a claim upon which relief can be granted and laches. They also filed motions to dismiss for lack of jurisdiction, which were denied, and now motions to reconsider. At the conclusion of the hearing on the motions and exceptions, the court received evidence on the issue of laches pursuant to an agreement of the parties that, if dismissal be denied, the court might sever and decide that issue in advance of trial.

Each of the cases arises out of a dispute whether the defendant longshoremen were entitled under the collective bargaining agrement to an increased rate of compensation due to an alleged deteriorated condition of the hides. Pursuant to the agreement, the dispute was submitted to an arbitrator who in each instance ruled against the longshoremen. According to the complaints, they rejected his rulings and on the advice of the defendant union officers refused to unload the hides, thereby requiring that the goods be carried to the next port where they were unloaded and returned to Boston by land transportation at considerable expense. The complaints seek damags for the additional shipping charges and for disruption of normal business operations.

 The complaints are substantially identical, except for differences in dates, ships, members of working gangs and the cost of trucking the goods from the port where unloaded back to Boston. They set out in detail the actions taken under the arbitration clause and allege either that the defendants failed to comply with the arbitrator's rulings or refused to work in the absence of an arbitrator's ruling, both violations of the agreement. However, their only reference to the defend-

ant affiliated Locals is a statement that the defendant Flynn is the business delegate of Local 805. The individual workers are described only as members of the International union. Therefore, at the outset the complaints against Locals 799 and 800 are dismissed.

■ In approaching the question whether there is admiralty jurisdiction of these suits, it should first be noted that without doubt jurisdiction would lie on the civil side of the court if the suits had been filed there under § 301, Labor Management Relations Act, 1947, 29 U. S.C. § 185. One of the purposes of § 301 was to deprive unions in this type of case of the defense of their incapability of being sued as entities,[1] a defense which has not been pleaded in these cases and which has therefore been waived. Barrack v. Van Dusen, 3 Cir., 1962, 309 F.2d 953, 957. The plaintiffs, however, emphasize that the actions are not based upon § 301. Paraphrasing Justice Black's characterization of the key issue in Romero v. International Terminal Operating Co., 1958, 358 U.S. 354, 388, 79 S.Ct. 468, 3 L.Ed.2d 368, the real core of the jurisdictional controversy is whether a few more employers, by suing in admiralty, can have their suits for damages passed on by a federal judge instead of a jury.

■■ What little precedent the court has been able to discover on the point sustains admiralty jurisdiction of these proceedings, Nederlandsch Amer. S.M. v. Stevedores' & L.B. Soc., E.D.La., 1920, 265 F. 397, American-Hawaiian S.S. Co. v. Sailors Union of the Pacific, N.D.Cal., 1941, 37 F.Supp. 828, and the court follows it,[2] in view of the rule of Dowd Box Co. v. Courtney, 1961, 368 U.S. 502, 82

S.Ct. 519, 7 L.Ed.2d 483, that § 301 did not operate to diminish prior existing jurisdiction. Also, the contract here involved, entitled "Longshore General Cargo Agreement" and marked Exhibit 1 at the hearing, provides that it "is meant to cover the loading and unloading of all ships' cargoes (including ship stores as specified in Article III) and the rigging of cargo handling gear of ships in the Port of Boston and vicinity," and appears to be so directly related to commerce on navigable waters as to be properly classified as a maritime contract. See 1 Benedict on Admiralty § 64 (6th ed. 1940). Correspondingly, a stevedoring contract is maritime. American Stevedores, Inc. v. Porello, 1947, 330 U.S. 446, 456, 67 S.Ct. 847, 91 L.Ed. 1011.

■ The next issue is whether good causes of action in admiralty are stated against the various defendants. This will depend on the provisions of § 301, which applies to all types of cases in all courts whether state or federal. Textile Workers Union of America v. Lincoln Mills of Alabama, 1956, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, and Local 174, Teamsters, etc., of America v. Lucas Flour Co., 1962, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593. As stated in the latter decision at p. 103, 82 S.Ct. at p. 576, "The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute," and at p. 104, 82 S.Ct. at p. 577, "The importance of the area which would be affected by separate systems of substantive law makes the need for a single body of federal law particularly compelling."

■■ Section 301(b), Labor Management Relations Act, 1947, 29 U.S.C. §

1. This is a good defense under Massachusetts law. Tyler v. Boot & Shoe Workers Union, 1933, 285 Mass. 54, 188 N.E. 509. Whether it would prevail in these admiralty actions would seem to turn on whether they were brought for the purpose of enforcing a "substantive right existing," independently of § 301, within the meaning of exception (1) in Rule 17 (b), Fed.R.Civ.P. Cf. Romero v. International Terminal Operating Co., supra, holding that admiralty proceedings are not "cases arising."

2. The court admits to some doubt, having failed to discover any precedent after 1947, when the Labor Management Relations Act was passed. Also, the annotations to § 301 at 29 U.S.C.A. § 185 note many cases brought under § 301 to which seamen and longshoremen unions were parties.

185(b), prohibits by implication suits against individual union officers and members for breach of a collective bargaining agreement when a union breach is alleged. Atkinson v. Sinclair Refining Co., 1962, 370 U.S. 238, 247–249, 82 S.Ct. 1318, 8 L.Ed.2d 462. The plaintiffs have advanced the same argument made by the employer in the *Atkinson* case, that their suit against the individuals is necessary to anticipate the possible union defense that the work stoppages were unauthorized by the union. This argument is rejected here for the same reason stated in the *Atkinson* decision, n. 7 at p. 249, 82 S.Ct. 1318, viz., the complaints do not allege that the individual defendants were acting in their personal capacities and not in behalf of the union. On the contrary, the allegations in the complaints strongly indicate that the refusals to unload the cargoes were concerted actions by all the defendants. "Where the union has inflicted the injury it alone must pay." Atkinson v. Sinclair Refining Co., supra, at p. 249, 82 S.Ct. at p. 1325. Therefore the proceedings against the union officers and members must be dismissed.

Under § 301(a), valid causes of action are alleged against the International union and Local 805,[3] no question having been raised as to the unions' capacity to be sued.

Laches is a substantial defense and is pressed by the defendants only in No. 64–32, which was instituted more than five years after the cause of action arose. In deciding this question, no guidance is available from the Labor Management Relations Act, which does not include a statute of limitations for actions brought pursuant to § 301. On the basis of documentary evidence received at the hearing, I find no inexcusable delay on the plaintiffs' part in seeking their remedy in this case nor any substantial prejudice to the defendants. The exhibits consist of eight letters sent to the defendant John F. Moran, vice-president of the International union, from April 1959 to February 1962 notifying him of the plaintiffs' claim and one letter sent to the Boston Shipping Association in May 1963 asking that the matter be docketed for a claims meeting. Since the applicable state statute of limitations, Mass. G.L. c. 260, § 2, providing for a six-year period of limitations, has not expired and the plaintiffs' delay was not inexcusable, the motion to dismiss for laches is denied, Gardner v. Panama R. Co., 1951, 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31.

Accordingly, it is ordered that the motions to dismiss filed by the individual defendants are allowed for failure to state a claim upon which relief can be granted. The motions to dismiss filed by Locals 799 and 800 are allowed for the reason that no claim whatever is stated as to those Locals. The motions and exceptions filed by the defendants International Longshoremen's Association (AFL–CIO) and Local 805 are denied.

3. It does not follow that the actions will necessarily be tried without a jury. Under the merger of civil and admiralty procedure effective July 1, 1966, the defendants may, under Rule 39(c) Fed.R. Civ.P., seek to obtain the consent of the plaintiffs to jury trials, or move that any issue be tried with an advisory jury.